**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ADAM M. DOWNS, as the Fund Administrator of the LIUNA National (Industrial) Pension Fund, and of the Laborers' National Health and Welfare Fund 905 - 16th Street, N.W. Washington, D.C. 20006, | ) ) ) ) ) ) ) ) | |
| and | ) ) | |
| BETH VIA, as the Fund Administrator of the Service Contract Education and Training Trust Fund, 905 - 16th Street, N.W. Washington, D.C. 20006, | ) ) ) ) ) ) ) | Civil Action No. 1:19-cv-3782 |
| Plaintiffs, | ) ) ) | **COMPLAINT** |
| vs. | ) ) ) | |
| RBNR SOLUTIONS, LLP 702 Russell Avenue, Suite 305 Gaithersburg, Maryland 20877, | ) ) ) ) | |
| BLENS SOLUTIONS, LLC 1812 Quivers Keep Chesapeake, Virginia 23321, | ) ) ) ) | |
| RBNR MANAGEMENT GROUP, LLC 702 Russell Avenue, Suite 305 Gaithersburg, Maryland 20877, | ) ) ) ) | |
| ROBIN BREVARD 1812 Quivers Keep Chesapeake, Virginia 23321, | ) ) ) ) | |
| ALI RASSOULPOUR | ) | |

-2-

| | |
|---|---|
| **702 Russell Avenue, Suite 305** | ) |
| **Gaithersburg, Maryland 20877,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **NAYEREH RASSOULPOUR** | ) |
| **702 Russell Avenue, Suite 305** | ) |
| **Gaithersburg, Maryland 20877** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

Plaintiffs, by and through their undersigned attorney, and for their causes of

action against Defendants, complain and allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.     This is a civil action brought pursuant to Sections 502(a)(2), 502 (a)(3) and

515 of the Employee Retirement Income Security Act, as amended (ERISA), 29 U.S.C.

§§1132 (a)(3) and 1145, by the administrator of the LIUNA National (Industrial) Pension

Fund (the "Pension Fund"), the Laborers' National Health and Welfare Fund (the

"Health Fund"), and the administrator of the Service Contract Education and Training

Trust Fund (the "Education Fund") to secure performance by contributing employers

RBNR Solutions, LLC ("RBNR") and Blens Solutions, LLC ("Blens"), and its owner and

officers of specific statutory and contractual obligations to pay contributions to the

Pension Fund, Health Fund and the Education Fund on behalf of their employees, to

pay interest on delinquent contributions, to pay collection costs, and to submit

contribution reports.  The action further seeks to remedy breaches of fiduciary duties,

prohibited transactions, and violations of the Racketeer Influenced and Corrupt

-3-

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and the common law tort of fraud with respect to the contributions owed to the Pension Fund, Health Fund and the Education Fund.

2.      Jurisdiction is conferred on this court under the following statutes:

(a)      ERISA Sections 502(e)(1), (f), 29 U.S.C. §§1132(e)(1), (f);

(b)      28 U.S.C. §1331 (federal question); and

(c)      29 U.S.C. §1337 (civil action arising under act of Congress regulating commerce).

(d)      18 U.S.C. § 1964(a) and (c) (civil remedies)

(e)      28 U.S.C. § 1367(a) (jurisdiction over the claims arising under state law)

3.      Venue properly lies in the district for the District of Columbia pursuant to Section 502(e) of ERISA, 29 U.S.C. §1132(e).  Plaintiff Adam Downs ("Downs") brings this action on behalf of the Pension Fund and the Health Fund. The Pension Fund and Health Fund's main administrative office is located in the District of Columbia and the substantial administration of the Service Contract Education and Training Trust Fund takes place in the District of Columbia in the same administrative office as the Pension Fund and Health Fund.

4.      Under ERISA Section 502(e), 29 U.S.C. §1132(e), Defendants may be served in any federal district in which it/he resides or may be found so as to subject Defendants to the personal jurisdiction of this Court.

-4-

## IDENTIFICATION OF THE PARTIES

5.      Plaintiff Downs is the Fund Administrator of the Pension Fund and the

Fund Administrator of the Health Fund.  As such, he is a fiduciary with respect to the

Pension Fund and Health Fund within the meaning of Sections 3(21) and 502 of ERISA

(29 U.S.C. §§1002(21) and 1132).  He brings this action in his fiduciary capacity on

behalf of and for the benefit of the Pension Fund and Health Fund with the authorization

of the Pension Fund's and Health Fund's Board of Trustees.

6.      The Pension Fund is a joint labor-management trust fund established and

maintained pursuant to an Agreement and Declaration of Trust and various collective

bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29

U.S.C. §186(c)(5)).  The Pension Fund is an employee pension plan and an employee

benefit plan within the meaning of Sections 3(2) and (3) and 502(d)(1) of ERISA (29

U.S.C. §§ 1002 (2) and (3) and 1132(d)(1)), and is a multiemployer plan within the

meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. §§1002(37) and 1145).  The

Pension Fund is authorized to maintain suit as an independent legal entity under ERISA

Section 502 (d) (1) (29 U.S.C. § 1132 (d) (1)).  The purpose of the Pension Fund is to

provide pension benefits to eligible employees on whose behalf employers contribute

pursuant to the collective bargaining agreements with the Laborers' International Union

of North America (LIUNA) or with Local Unions and District Councils affiliated with

LIUNA.

7.      The Health Fund is a joint labor-management trust fund established and

-5-

maintained pursuant to an Agreement and Declaration of Trust and various collective

bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29

U.S.C. §186(c)(5)) to provide health care and related benefits to eligible employees on

whose behalf employers contribute pursuant to collective bargaining agreements with

LIUNA or with Local Unions or District Councils affiliated with LIUNA.  The assets of the

Health Fund are held in trust in a common pool from which all benefits are paid and

which is invested to fund the promised benefits.  The Health Fund is an employee

welfare benefit plan and an employee benefit plan within the meaning of ERISA

Sections 3(2), 3(3) and 502(d)(1) (29 U.S.C. §§1002(2), (3),1132(d)(1)), and is a

multiemployer plan within the meaning of ERISA Sections 3(37) and 515 (29 U.S.C.

§§1002(37), 1145).  As such, the Health Fund is authorized to maintain suit as an

independent legal entity under ERISA Section 502(d)(1) (29 U.S.C. §1132(d)(1)).

8.     Plaintiff Beth Via is the administrator of the Education Fund. As such, she

is a fiduciary with respect to the Education Fund within the meaning of Sections 3(21)

and 502 of ERISA (29 U.S.C. §§1002(21) and 1132).  She brings this action in her

fiduciary capacity on behalf of and for the benefit of the Education Fund.

9.      The Education Fund is a joint labor-management trust fund established

and maintained pursuant to an Agreement and Declaration of Trust and various

collective bargaining agreements in accordance with Section 302(c)(6) of the

Taft-Hartley Act (29 U.S.C. §186(c)(6)) to provide education and job training benefits to

eligible employees on whose behalf employers contribute pursuant to collective

-6-

bargaining agreements with LIUNA or with Local Unions or District Councils affiliated with LIUNA.  The Education Fund is an employee welfare benefit plan and an employee benefit plan within the meaning of Sections 3(2) and (3) and 502(d)(1) of ERISA (29 U.S.C. §§ 1002 (2) and (3) and 1132(d)(1)), and is a multiemployer plan within the meaning of Sections 3(37) and 515 of ERISA (29 U.S.C. §§1002(37) and 1145).  As such, the Education Fund is authorized to maintain suit as an independent legal entity under ERISA Section 502 (d) (1) (29 U.S.C. § 1132 (d) (1)).

10.     Defendant RBNR Solutions, LLP ("RBNR Solutions") is a for-profit business partnership whose primary business is providing janitorial services to Federal Government agencies and other customers including the Bakersfield and Robert E. Coyle Federal Court House Buildings in California.  RBNR Solutions' primary office is located at 702 Russell Avenue, Suite 305, Gaithersburg, Maryland 20877.  RBNR Solutions is an employer within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145).

11.     Defendant Blens Solutions, LLC ("Blens") a for-profit business corporation whose primary business is providing janitorial services to Federal Government agencies and other customers including Tarrant County Court House and Garage in Texas. Blens' primary office is located at 1812 Quivers Keep, Chesapeake, Virginia 23321. Blens also shares offices with RBNR Solutions at 702 Russell Avenue, Suite 305, Gaithersburg, Maryland 20877.  The checks that were sent on behalf of Blens' were sent from the Gaithersburg office, and the name and address displayed on the top of

each check is the Gaithersburg office address.  Blens is an employer within the

meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145).

12.     Defendant RBNR Management Group, LLC ("RBNR Management") is a

for profit corporation that manages both RBNR Solutions and Blens Solutions. RBNR

Management provides resources to both companies, provides office space which

enables both companies to compete for local service contracts, and keeps track of both

companies' assets.  RBNR Management's primary office is located at 702 Russell

Avenue, Suite 305, Gaithersburg, Maryland 20877.  RBNR Management is an employer

within the meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145).

13.     Defendant Robin Brevard is the owner and President of Blens and RBNR

Management, and a Partner of RBNR Solutions.  As such, he has and exercises

discretionary control over payment or nonpayment of RBNR Solutions, Blens, and

RBNR Management's financial obligations.  Defendant Robin Brevard is a fiduciary with

respect to the Pension Fund, the Health Fund, and the Education Fund within the

meaning of Section 3(21) of ERISA (29 U.S.C. §§1002(21) inasmuch he has and

exercises discretionary authority over plan assets of those employee benefit plans,

including the contributions owed to the plans.  He is also an employer within the

meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145).

14.     Defendant Ali Rassoulpour is the Vice President and Chief Financial

Officer of RBNR Solutions, Blens, and RBNR Management.  As such, he has and

exercises discretionary control over payment or nonpayment of RBNR Solutions, Blens,

-8-

and RBNR Management's financial obligations.  Defendant Ali Rassoulpour is a

fiduciary with respect to the Pension Fund, the Health Fund, and the Education Fund

within the meaning of Section 3(21) of ERISA (29 U.S.C. §§1002(21) inasmuch he has

and exercises discretionary authority over plan assets of those employee benefit plans,

including the contributions owed to the plans.  He is also an employer within the

meaning of Sections 3(5) and 515 of ERISA (29 U.S.C. §§1002(5) and 1145).

15.     Defendant Nayereh Rassoulpour is a Partner of RBNR Solutions and she

is President of RBNR Management.  As such, she has and exercises discretionary

control over payment or nonpayment of RBNR Solutions' financial obligations.

Defendant Nayereh Rassoulpour is a fiduciary with respect to the Pension Fund, the

Health Fund, and the Education Fund within the meaning of Section 3(21) of ERISA (29

U.S.C. §§1002(21) inasmuch she has and exercises discretionary authority over plan

assets of those employee benefit plans, including the contributions owed to the plans.

She is also an employer within the meaning of Sections 3(5) and 515 of ERISA (29

U.S.C. §§1002(5) and 1145).

**FIRST CAUSE OF ACTION**
**(ERISA § 515: RBNR Delinquent Pension Fund Payments and Reports)**

16.     RBNR Solutions is party to and contractually bound by a Collective

Bargaining Agreement with the Laborers' International Union of North America

("LIUNA") Local Union 220 that sets terms and conditions of employment for RBNR

Solutions employees who work at the Bakersfield and Robert E. Coyle Federal Court

House Buildings in California ("Court Buildings").  The Collective Bargaining Agreement

is effective from May 1, 2017 through May 14, 2020.

17.     The Collective Bargaining Agreement requires RBNR Solutions to make contributions to the Pension Fund at a certain hourly rate for each hour for which an employee covered by the Collective Bargaining Agreement receives pay.  These contributions are necessary to fund pension benefits being earned by covered employees by their work for RBNR Solutions at the Court Buildings.  Specifically, Article XXI-PENSION of the Collective Bargaining Agreement provides as follows:

> "The Employer shall contribute for each hour for which an employee covered by this Agreement is entitled to pay, to the Laborers' International Union of North America's National (Industrial) Pension Fund in accordance with Addendum B to this Agreement."

18.     The Addendum A to the Collective Bargaining Agreement provides that effective August 1, 2019 the rate at which RBNR Solutions is required to contribute to the Pension Fund is $1.72 per hour paid for employees at the Court Buildings.  The Addendum A for the Collective Bargaining Agreement was signed by Defendants Robin Brevard and Nayereh Rassoulpour.

19.     Addendum B to the Collective Bargaining Agreement provides, with regard to the Pension Fund as follows:

(a)     Paragraph A requires RBNR Solutions to contribute to the Pension Fund "for each hour an employee covered by this Agreement is entitled to pay, including hours of paid vacation, paid holidays, and other periods for which pay is paid or owed to an employee." The obligation to contribute for an employee commences on the first day of the employee's employment

-10-

in a job classification covered by the Collective Bargaining Agreement.

(b)     Paragraph B requires RBNR Solutions to pay contributions on a calendar

monthly basis.  Specifically, RBNR Solutions is required to pay to the

Pension Fund contributions for employee hours in a particular month by

the twentieth (20th) day of the following month.  This Section further

requires RBNR Solutions to submit to the Pension Fund monthly

contribution reports with the contributions so that the Pension Fund can

properly credit to the employees and verify the accuracy of the payment.

(c)     Paragraph C entitles the Pension Fund to have a certified public

accountancy firm audit RBNR Solutions' payroll and other records to verify

the accuracy of contributions to the Pension Fund, verifying employee

eligibility, and for other purposes necessary for administration of the Fund.

RBNR Solutions is also required to provide the Pension Fund with any and

all truthful information necessary for administration of the Fund.

(d)     Paragraph E provides that if RBNR Solutions fails to submit contributions

or contributions reports to the Pension Fund when due, RBNR Solutions

shall be considered an employer in default and shall be subject to charges

for interest, liquidated damages, attorneys fees, costs, audit fees and

other costs of collection in accordance with the Pension Fund's

Agreement and Declaration of Trust (hereinafter referred to as "the

Pension Fund's Trust Agreement").   This Section further provides that the

-11-

Pension Fund may take any and all lawful collection actions, including the commencement of legal proceedings, without regard to any grievance or arbitration procedure of the Collective Bargaining Agreement.

(e)     The last paragraph provides that RBNR Solutions accepts and agrees to be bound by the Pension Fund's Trust Agreement.

20.     The Pension Fund's Trust Agreement (Delinquency Control Program Section III Delinquency Procedures) provides, in pertinent part, as follows:

"C.     Delinquent employers shall be assessed the following charges:

1.     Each employer carrying a contribution delinquency for thirty (30) calendar days or more will automatically be assessed interest on the delinquent amount at the rate of 1½% per month for each month or part thereof from the date on which the Employer became delinquent until the date on which the delinquency is collected.  All interest assessments will be immediately due and payable.  The Fund Administrator will notify the Employer of the interest charge.

2.     Each Employer whose delinquent status is referred to the Fund Counsel for legal action shall, in addition to interest, be charged liquidated damages in an amount equal to twenty percent (20%) of the unpaid delinquent contributions as the reasonably anticipated costs of administration and collection. All liquidated damages shall be immediately due and payable.  The Fund Administrator will notify the Employer in writing of the assessment of liquidated damages.

3.     Each delinquent Employer that is audited pursuant to Part III-B-3 hereof shall be charged for the actual cost of the audit.  The Fund Administrator will notify the Employer of the assessment of audit fees charged which shall be due and payable immediately.

4.     In addition to interest and auditing charges, each Employer

-12-

> against which legal action is taken to collect delinquent contributions or other monies due the Fund shall be charged and liable to the Fund for attorneys' fees and for costs incurred by the Fund in taking such legal action, as well as for the liquidated damages assessed under Part III-C-2 hereof, and such other relief as may be available to the Fund under the Employee Retirement Income Security Act and other applicable law."

21.     As of the date of this Complaint, RBNR Solutions has failed to pay the contributions owed to the Pension Fund for the August, September and October 2019 work periods for the Robert E. Coyle Federal Court House Buildings.  RBNR Solutions owes the Pension Fund **$2,509.76** in contributions for the August 2019 work period and **$2,406.93** in contributions for the September 2019 work period.  The Pension Fund estimates that the total amount of contributions owed for the October 2019 work periods is **$2,507.67**.

22.     As of the date of this Complaint, RBNR Solutions has also failed to pay the contributions owed to the Pension Fund for the August, September and October 2019 work periods for the Bakersfield Court House Building.  RBNR Solutions owes the Pension Fund **$473.00** in contributions for the August 2019 work period and **$433.44** in contributions for the September 2019 work period.  The Pension Fund estimates that the total amount of contributions owed for the October 2019 work periods is **$483.32**.

23.     Estimating the contributions owed to the Pension Fund at the Court House Buildings is necessary because RBNR Solutions has failed to comply with its contractual and legal obligation to submit monthly contribution reports detailing the hours worked by each employee covered by the collective bargaining agreement.  The

-13-

Pension Fund cannot accurately calculate the contributions owed without the contribution reports.

24.     The contribution amounts have been estimated based off of the average number of hours reported to the Pension Fund on the last five report forms RBNR Solutions submitted to the Pension Fund.  The Pension Fund estimates that RBNR Solutions' employees worked 1,457.95 hours for October 2019, at a rate of $1.72 per hour worked and/or paid to the employees covered by the collective bargaining agreement at the Robert E. Coyle Federal Court House Buildings.  The Pension Fund estimates that RBNR Solutions' employees worked 277.20 hours in October 2019, at a rate of $1.72 per hour worked and/or paid at the Bakersfield Court House Building. Basing the contribution amounts on an estimate of the number of hours worked by RBNR Solutions' employees is necessary because the Defendants failed to comply with their contractual and legal obligation to submit monthly contribution reports for the month.

25.     RBNR Solutions is required by the Pension Fund's Agreement and Declaration of Trust, as adopted by RBNR Solutions in the Collective Bargaining Agreements, to pay interest on past due contributions at the rate of 1.5% compounded per month from the date due to the date paid.  As of December 1, 2019, the Pension Fund estimates that RBNR Solutions owes **$225.01** in accrued interest charges on past due contributions at the Robert E. Coyle Federal Court House Buildings and **$41.86** at the Bakersfield Court House Building.  The accrued interest amount is estimated due to

-14-

RBNR Solutions' failure to submit contribution reports for October 2019.  Interest continues to accrue on unpaid amounts at the rate of 1.5% per month compounded.

26.     In addition to the delinquent contributions and accrued interest, the Pension Fund's Agreement and Declaration of Trust provides for penalties to be assessed to employers that submit contributions by check that is not honored by the bank.  The Pension Fund's Agreement and Declaration of Trust provides that the penalty for checks that could not be cashed is ten percent (10%) of the contributions owed up to a maximum of $500.  RBNR Solutions has repeatedly submitted checks to the Pension Fund that were not honored by the bank for insufficient money in the bank account on which the check was drawn.  RBNR Solutions owes the Pension Fund **$538.81** in penalties for checks that were rejected by the bank covering the June 2019 and August 2019 work periods.

27.     By failing to pay these contributions, interest charges, and penalties, and by failing to submit the required contribution reports to the Pension Fund when due RBNR Solutions has violated the Collective Bargaining Agreement, the terms of the Pension Fund including its Trust Agreement, and ERISA Section 515.

28.     The Pension Fund has repeatedly demanded that RBNR Solutions pay the delinquent contributions and submit the contribution reports.  As of the date of this Complaint, RBNR Solutions has not complied.

29.     RBNR Solutions has a continuing obligation to contribute to the Pension Fund, and submit contribution reports, for the term of the Collective Bargaining

-15-

Agreement under federal labor laws.  RBNR Solutions will also continue to accrue interest charges while the contributions remain unpaid.  Based on RBNR Solutions' conduct, it is reasonable to assume that RBNR Solutions will not pay the contributions and accrued interest charges until ordered to do so by the Court.

30.     RBNR Solutions received from the GSA contract payments intended to compensate RBNR Solutions for its contributions to the Pension Fund for the employees covered by the Collective Bargaining Agreement in accordance with the labor standards regulatory scheme of the Service Contract Act, 41 U.S.C. § 351, *et seq.* When it fails to make contributions to the Pension Fund for employees covered by the Collective Bargaining Agreements, RBNR Solutions is unjustly enriched at the expense of its employees and the Federal Government as well as the Pension Fund.  Failure by RBNR Solutions to timely pay contributions to the Pension Fund for its employees constitutes a violation of the Service Contract Act, RBNR Solutions' government contract, and federal procurement regulations, and renders RBNR Solutions and its responsible officers liable for the unpaid amounts, termination of its existing government contract, and debarment from eligibility for future government contracts.

31.     Pursuant to the Collective Bargaining Agreement, the Pension Fund's Trust Agreement, and ERISA Sections 502(a)(3), 502(g)(2) and 515, 29 U.S.C. §§1132(a)(3), (g)(2), 1145, the Pension Fund is entitled to recover from RBNR Solutions the delinquent contributions and contribution reports, interest on the delinquent contributions at the rate of one and one-half percent (1 ½%) per month, liquidated

-16-

damages (equal to the greater of the interest payable or 20% of the contributions),

attorneys' fees, auditing fees and all other costs of collection.

## SECOND CAUSE OF ACTION
### (RBNR Delinquent Health Fund Contributions and Reports)

32.     Plaintiffs incorporate and reallege herein each and every allegation of

paragraphs 1 through 31 to the same effect as if restated here in full, and further alleges

as follows.

33.     RBNR Solutions is party to and contractually bound by a Collective

Bargaining Agreement with LIUNA Local 220 that sets terms and conditions of

employment for RBNR Solutions employees who work at the Court Buildings.  The

Collective Bargaining Agreement is effective from May 1, 2017 through May 14, 2020.

34.     The Collective Bargaining Agreement requires RBNR Solutions to make

contributions to the Health Fund at a certain hourly rate for each hour for which an

employee covered by the Collective Bargaining Agreement receives pay.  These

contributions are necessary to fund health benefits being earned by covered employees

by their work for RBNR Solutions at the Court House Buildings.  Specifically, Article

XX-HEALTH AND WELFARE of the Collective Bargaining Agreement provides as

follows:

> "The Employer shall contribute for each hour for which an
> employee covered by this Agreement is entitled to pay, to the
> Laborers' International Union of North America's National
> (Industrial) Pension Fund in accordance with Addendum B to this
> Agreement."

35.     The Addendum A to the Collective Bargaining Agreement provides

-17-

that effective August 1, 2019 the rate at which RBNR Solutions is required to contribute to the Health Fund is $7.87 per hour paid for employees at the Court Buildings.  The Addendum A for the Collective Bargaining Agreement was signed by Defendants Robin Brevard and Nayereh Rassoulpour.

36.     Addendum B, Section 2, of the Collective Bargaining Agreement provides with regard to the Health Fund as follows:

(a)     Paragraph A notifies RBNR Solutions that each employee covered by the Collective Bargaining Agreement shall be covered by Plan II of the Health Fund subject to the plan's eligibility rules, and the Health Fund's right to withhold payment of benefits in the event that the Employer fails to make the required contributions.

(b)     Paragraph B requires RBNR Solutions to contribute to the Health Fund "for each hour an employee covered by this Agreement is entitled to pay, including hours of paid vacation, paid holidays, and other periods for which pay is paid or owed to an employee."The obligation to contribute for an employee commences on the first day of the employee's employment in a job classification covered by the Collective Bargaining Agreement.

(c)     Paragraph C requires RBNR Solutions to pay contributions on a calendar monthly basis.  Specifically, RBNR Solutions is required to pay to the Health Fund contributions for employee hours in a particular month by the twentieth (20th) day of the following month.  This Section further requires

-18-

RBNR Solutions to submit to the Health Fund monthly contribution reports with the contribution payment so that the Health Fund can verify the accuracy of the payment.

(d)  Paragraph D entitles the Pension Fund to have a certified public accountancy firm audit RBNR Solutions' payroll and other records to verify the accuracy of contributions to the Health Fund, verifying employee eligibility, and for other purposes necessary for administration of the Fund. RBNR Solutions is also required to provide the Health Fund with any and all truthful information necessary for administration of the Fund.

(e)  Paragraph F provides that if RBNR Solutions fails to submit contributions or contributions reports to the Health Fund when due, RBNR Solutions shall be considered an employer in default and shall be subject to charges for interest, liquidated damages, attorneys fees, costs, audit fees and other costs of collection in accordance with the Health Fund's Agreement and Declaration of Trust (hereinafter referred to as "the Health Fund's Trust Agreement").   This Section further provides that the Health Fund may take any and all lawful collection actions, including the commencement of legal proceedings, without regard to any grievance or arbitration procedure of the Collective Bargaining Agreement.

(f)  Paragraph H provides that RBNR Solutions accepts and agrees to be bound by the Health Fund's Trust Agreement.

**-19-**

37.     The Health Fund's Trust Agreement (Article VI, Section 6.04) provides, in

pertinent part, as follows:

> DEFAULT IN PAYMENT: . . . In addition to any other
> remedies to which the Fund or the Board is entitled, any
> Employer which fails to pay contributions or other payments
> owed shall be liable to the Fund for interest at the rate of
> one-and-one-half percent (1 ½%) per month compounded
> from the due date through the date of payment, as well as
> for all expenses of collection incurred by the Fund, including
> attorneys' fees and court costs.  The Board is empowered to
> institute proceedings in law or equity, and to take any other
> action, to collect Contributions and all other payments due.
> If legal proceedings are initiated against an Employer in
> default, the Employer shall also be liable to the Fund for
> liquidated damages in an amount equal to twenty percent
> (20%) of the Contributions past due.

38.     As of the date of this Complaint, RBNR Solutions has failed to pay to the

Health Fund the contributions owed for the August, September and October 2019 work

periods at the Robert E. Coyle Federal Court House Building.  RBNR Solutions owes

the Health Fund **$11,483.59** in contributions for the August 2019 work period and

**$11,013.12** for the September 2019 work period.  The Health Fund estimates that the

total amount of contributions owed for the October 2019 work periods is **$11,474.07**.

39.     As of the date of this Complaint, RBNR Solutions has also failed to pay to

the Health Fund the contributions owed for the August, September and October 2019

work periods at the Bakersfield Court House Building.  RBNR Solutions owes the Health

Fund **$2,164.25** in contributions for the August 2019 work period and **$1,983.24** for the

September 2019 work period.  The Health Fund estimates that the total amount of

contributions owed for the October 2019 work periods is **$2,181.56**.

-20-

40.     Estimating the contributions owed to the Health Fund is necessary because RBNR Solutions has failed to comply with its contractual and legal obligation to submit the monthly contribution report for October detailing the hours worked by each employee covered by the collective bargaining agreement.  The Health Fund cannot accurately calculate the contributions owed without the contribution report.

41.     The contribution amounts have been estimated based off of the average number of hours reported to the Health Fund on the last five report forms RBNR Solutions submitted to the Health Fund for both the Robert E. Coyle Federal Court House Buildings and the Bakersfield Court House.  The Health Fund estimates that RBNR Solutions' employees worked 1,457.95 hours in October 2019, at a rate of $7.87 per hour worked and/or paid to the employees covered by the collective bargaining agreement at the Robert E. Coyle Federal Court House Buildings.  The Health Fund estimates that RBNR Solutions' employees worked 277.20 hours in October 2019, at a rate of $7.87 per hour worked and/or paid to the employees covered by the collective bargaining agreement at the Bakersfield Court House Buildings.  Basing the contribution amounts on an estimate of the number of hours worked by RBNR Solutions' employees is necessary because the Defendants failed to comply with their contractual and legal obligation to submit monthly contribution reports for the month.

42.     RBNR Solutions is required by the Health Fund's Agreement and Declaration of Trust, as adopted by RBNR Solutions in the Collective Bargaining Agreements, to pay interest on past due contributions at the rate of 1.5% compounded

-21-

per month from the date due to the date paid.  As of December 1, 2019, the Health

Fund estimates that RBNR Solutions owes **$1,029.53** in accrued interest charges on

past due contributions for the Robert E. Coyle Federal Court House Buildings and

**$191.53** in accrued interest charges on past due contributions for the Bakersfield Court

House.  The accrued interest amount is estimated due to RBNR Solutions' failure to

submit contribution report for October 2019.  Interest continues to accrue on unpaid

amounts at the rate of 1.5% per month compounded.

43.     In addition to the delinquent contributions and accrued interest, the Health

Fund's Agreement and Declaration of Trust provides for penalties to be assessed to

employers that submit contributions by check that is not honored by the bank.  The

Health Fund's Agreement and Declaration of Trust provides that the penalty for checks

that could not be cashed is ten percent (10%) of the contributions owed up to a

maximum of $500.  RBNR Solutions has repeatedly submitted checks to the Health

Fund that were not honored by the bank for insufficient money in the bank account on

which the check was drawn.  RBNR Solutions owes the Pension Fund **$1,000** in

penalties for checks that were rejected by the bank covering the June 2019 and August

2019 work periods.

44.     By failing to pay these contributions, interest charges, and penalties, and

by failing to submit the contribution reports to the Health Fund when due, RBNR

Solutions has violated the Collective Bargaining Agreement, the terms of the Health

Fund including its Trust Agreement, and ERISA Section 515.

-22-

45.     The Health Fund has repeatedly demanded that RBNR Solutions pay the delinquent contributions.  As of the date of this Complaint, RBNR Solutions has not complied.  As a result, employees of RBNR Solutions have lost health care coverage and will continue to lack the health care coverage they are entitled to under the Collective Bargaining Agreement until RBNR Solutions' has paid the contributions owed to the Health Fund to pay for those benefits.

46.     RBNR Solutions has a continuing obligation to contribute to the Health Fund, and submit contribution reports, for the term of the Collective Bargaining Agreement under federal labor laws.  RBNR Solutions will also continue to accrue interest charges while the contributions remain unpaid.  Based on RBNR Solutions' conduct, it is reasonable to assume that RBNR Solutions will not pay the contributions and accrued interest charges until ordered to do so by the Court.

47.     RBNR Solutions received from the GSA contract payments intended to compensate RBNR Solutions for its contributions to the Health Fund for the employees covered by the Collective Bargaining Agreement in accordance with the labor standards regulatory scheme of the Service Contract Act, 41 U.S.C. § 351, *et seq*.  When it fails to make contributions to the Health Fund for employees covered by the Collective Bargaining Agreements, RBNR Solutions is unjustly enriched at the expense of its employees and the Federal Government.  Failure by RBNR Solutions to timely pay contributions to the Health Fund for its employees constitutes a violation of the Service Contract Act, RBNR Solutions' government contract, and federal procurement

-23-

regulations, and renders RBNR Solutions and its responsible officers liable for the

unpaid amounts, termination of its existing government contract, and debarment from

eligibility for future government contracts.

48.     Pursuant to the Collective Bargaining Agreement, the Health Fund's

Trust Agreement, and ERISA Sections 502(a)(3), 502(g)(2) and 515, 29 U.S.C.

§§1132(a)(3), (g)(2), 1145, the Health Fund is entitled to recover from RBNR Solutions

the delinquent contributions and contribution reports, interest on the delinquent

contributions at the rate of one and one-half percent (1 ½%) per month, liquidated

damages (equal to the greater of the interest payable or 20% of the contributions),

attorneys' fees, auditing fees and all other costs of collection.

### THIRD CAUSE OF ACTION
### (RBNR Solutions Delinquent Education Fund Contributions)

49.     Plaintiffs incorporate and reallege herein each and every allegation of

paragraphs 1 through 48 to the same effect as if restated here in full, and further alleges

as follows.

50.     RBNR Solutions is party to and contractually bound by a Collective

Bargaining Agreement with LIUNA Local 220 that sets terms and conditions of

employment for RBNR Solutions employees who work at the Court Buildings.  The

Collective Bargaining Agreement is effective from May 1, 2017 through May 14, 2020.

51.     The Collective Bargaining Agreement requires RBNR Solutions to make

contributions to the Education Fund at a certain hourly rate for each hour for which an

employee covered by the Collective Bargaining Agreements receives pay.  These

-24-

contributions are necessary to fund education and job training benefits being earned by

covered employees by their work for RBNR Solutions at the Court Buildings.

Specifically, Article XXII-SCETT FUND TRAINING of the Collective Bargaining

Agreement provides that the Employer shall contribute for each hour for which each

employee covered by the Agreement is entitled to pay, at the rate set in Addendum A

and in accordance with Addendum B. It further states that the Employer shall adopt the

Education Fund's Agreement and Declaration of Trust

52.     The Addendum A to the Collective Bargaining Agreements provides

that effective August 1, 2017, the rate at which RBNR Solutions is required to contribute

to the Education Fund is "$0.20 per hour paid" for employees at the Court Buildings.

Addendum A to the Collective Bargaining Agreement was signed by Defendants Robin

Brevard and Nayereh Rassoulpour.

53.     Addendum B, Section 3, of the Collective Bargaining Agreement provides

with regard to the Education Fund as follows:

(a)     Paragraph A requires RBNR Solutions to contribute to the Education Fund

"for each hour an employee covered by this Agreement is entitled to pay,

including hours of paid vacation, paid holidays, and other periods for

which pay is paid or owed to an employee."The obligation to contribute for

an employee commences on the first day of the employee's employment

in a job classification covered by the Collective Bargaining Agreement.

(b)     Paragraph B requires RBNR Solutions to pay contributions on a calendar

-25-

monthly basis.  Specifically, RBNR Solutions is required to pay to the

Education Fund contributions for employee hours in a particular month by

the twentieth (20th) day of the following month.  This Section further

requires RBNR Solutions to submit to the Education Fund monthly

contribution reports with the contributions so that the Education Fund can

properly credit to the employees and verify the accuracy of the payment.

(c)     Paragraph C entitles the Education Fund to have a certified public

accountancy firm audit RBNR Solutions' payroll and other records to verify

the accuracy of contributions to the Education Fund, verifying employee

eligibility, and for other purposes necessary for administration of the Fund.

RBNR Solutions is also required to provide the Education Fund with any

and all truthful information necessary for administration of the Fund.

(d)     Paragraph E provides that if RBNR Solutions fails to submit contributions

or contributions reports to the Education Fund when due, RBNR Solutions

shall be considered an employer in default and shall be subject to charges

for interest, liquidated damages, attorneys fees, costs, audit fees and

other costs of collection in accordance with the Education Fund's

Agreement and Declaration of Trust (hereinafter referred to as "the

Pension Fund's Trust Agreement").   This Section further provides that the

Pension Fund may take any and all lawful collection actions, including the

commencement of legal proceedings, without regard to any grievance or

-26-

arbitration procedure of the Collective Bargaining Agreement.

(e)     The last paragraph provides that RBNR Solutions accepts and agrees to

be bound by the Education Fund's Trust Agreement.

54.     The Education Fund's Trust Agreement (Article V, Sections 3, 4 and 5)

Requires the contributions and contribution report be submitted to the Education Fund

by the twentieth (20th) day of the month following the month in which the hours were

worked.  The Trust Agreement (Article V, Section 4) further provides as follows:

> DEFAULT IN PAYMENT.  Employers who fail to pay the
> contributions or other payments owed the Trust Fund when due may
> be expelled, at the Board's discretion, from participation in the Trust
> Fund.  In addition to any other remedies to which the Trust Fund (or
> its Board of Trustees) is entitled, any Employer which fails to pay
> contributions or other payments owed within thirty (30) days after the
> end of the month for which such contributions are due shall be liable
> to the Trust Fund for interest at the rate of one and one-half percent
> (1-1/2%) per month compounded from the due date through the date
> of payment, as well as for expenses of collection incurred by the
> Trust Fund, including attorneys' fees and court costs.  The Trustees
> are empowered to institute proceedings at law or equity, and to take
> any other action, to collect contributions and all other payments due.

55.     As of the date of this Complaint, RBNR Solutions has failed to pay to the

Education Fund the contributions owed for the August, September and October 2019

work periods at the Robert E. Coyle Federal Court House Buildings.  RBNR Solutions

owes the Education Fund **$291.83** in contributions for the August 2019 work period and

**$279.88** for the September 2019 work period.  The Education Fund estimates that the

total amount of contributions owed for the October 2019 work period is **$291.59**.

56.     As of the date of this Complaint, RBNR Solutions has failed to pay to the

-27-

Education Fund the contributions owed for the August, September and October 2019

work periods at the Bakersfield Court House Buildings.  RBNR Solutions owes the

Education Fund **$55.00** in contributions for the August 2019 work period and **$50.40** for

the September 2019 work period.  The Education Fund estimates that the total amount

of contributions owed for the October 2019 work period is **$55.44**.

57.    Estimating the contributions owed to the Education Fund is necessary

because RBNR Solutions has failed to comply with its contractual and legal obligation to

submit the monthly contribution report for October 2019 detailing the hours worked by

each employee covered by the collective bargaining agreement.  The Education Fund

cannot accurately calculate the contributions owed without the contribution reports.

58.    The contribution amount for October has been estimated based off of the

average number of hours reported to the Education Fund on the last five report forms

RBNR Solutions submitted to the Education Fund for both the Robert E. Coyle Federal

Court House Buildings and the Bakersfield Court House Building.  The Education Fund

estimates that RBNR Solutions' employees worked 1,457.95 hours in October 2019 at a

rate of $0.20 per hour worked and/or paid to the employees covered by the collective

bargaining agreement at the Robert E. Coyle Federal Court House Buildings.  The

Education Fund estimates that RBNR Solutions' employees worked 277.20 hours in

October 2019.  Basing the contribution amounts on an estimate of the number of hours

worked by RBNR Solutions' employees is necessary because the Defendants failed to

comply with their contractual and legal obligation to submit monthly contribution reports

-28-

for the month.

59.     RBNR Solutions is required by the Education Fund's Agreement and

Declaration of Trust, as adopted by RBNR Solutions in the Collective Bargaining

Agreements, to pay interest on past due contributions at the rate of 1.5% compounded

per month from the date due to the date paid.  As of December 1, 2019, the Education

Fund estimates that RBNR Solutions owes **$26.16** in accrued interest charges on past

due contributions for the Robert E. Coyle Federal Court House Buildings and **$4.87** in

accrued interest charges on past due contributions for the Bakersfield Court House.

The accrued interest amount is estimated due to RBNR Solutions' failure to submit

contribution report for October 2019.  Interest continues to accrue on unpaid amounts at

the rate of 1.5% per month compounded.

60.     In addition to the delinquent contributions and accrued interest, the

Education Fund's Agreement and Declaration of Trust provides for penalties to be

assessed to employers that submit contributions by check that is not honored by the

bank.  The Education Fund's Agreement and Declaration of Trust provides that the

penalty for checks that could not be cashed is ten percent (10%) of the contributions

owed up to a maximum of $500.  RBNR Solutions has repeatedly submitted checks to

the Education Fund that were not honored by the bank for insufficient money in the

bank account on which the check was drawn.  RBNR Solutions owes the Education

Fund **$69.08** in penalties for checks that were rejected by the bank covering the June

2019 and August 2019 work periods.

-29-

61.     By failing to pay these contributions, interest charges, and penalties to the Education Fund when due, RBNR Solutions has violated the Collective Bargaining Agreement, the terms of the Education Fund including its Trust Agreement, and ERISA Section 515.

62.     The Education Fund has repeatedly demanded that RBNR Solutions pay the delinquent contributions.  As of the date of this Complaint, RBNR Solutions has not complied.

63.     RBNR Solutions has a continuing obligation to contribute to the Education Fund, and submit contribution reports, for the term of the Collective Bargaining Agreement under federal labor laws.  RBNR Solutions will also continue to accrue interest charges while the contributions remain unpaid.  Based on RBNR Solutions' conduct, it is reasonable to assume that RBNR Solutions will not pay the contributions and accrued interest charges until ordered to do so by the Court.

64.     RBNR Solutions received from the GSA contract payments intended to compensate RBNR Solutions for its contributions to the Education Fund for the employees covered by the Collective Bargaining Agreement in accordance with the labor standards regulatory scheme of the Service Contract Act, 41 U.S.C. § 351, *et seq*. When it fails to make contributions to the Education Fund for employees covered by the Collective Bargaining Agreements, RBNR Solutions is unjustly enriched at the expense of its employees and the Federal Government.  Failure by RBNR Solutions to timely pay contributions to the Education Fund for its employees constitutes a violation of the

-30-

Service Contract Act, RBNR Solutions' government contract, and federal procurement regulations, and renders RBNR Solutions and its responsible officers liable for the unpaid amounts, termination of its existing government contract, and debarment from eligibility for future government contracts.

65.     Pursuant to the Collective Bargaining Agreement, the Education Fund's Trust Agreement, and ERISA Sections 502(a)(3), 502(g)(2) and 515, 29 U.S.C. §§1132(a)(3), (g)(2), 1145, the Education Fund is entitled to recover from RBNR Solutions the delinquent contributions and contribution reports, interest on the delinquent contributions at the rate of one and one-half percent (1 ½%) per month, liquidated damages (equal to the greater of the interest payable or 20% of the contributions), attorneys' fees, auditing fees and all other costs of collection.

### FOURTH CAUSE OF ACTION
### (ERISA § 515: Blens Delinquent Pension Fund Payments and Reports)

66.     Plaintiffs incorporate and reallege herein each and every allegation of paragraphs 1 through 65 to the same effect as if restated here in full, and further alleges as follows.

67.     Blens is party to and contractually bound by a Collective Bargaining Agreement with LIUNA Local 154 that sets terms and conditions of employment for Blens employees who work at the Tarrant County Court House Building and Garage in Texas ("Tarrant County").  The Collective Bargaining Agreement is effective from May 1, 2016 through May 14, 2020.

68.     The Collective Bargaining Agreement requires Blens to make

-31-

contributions to the Pension Fund at a certain hourly rate for each hour for which an employee covered by the Collective Bargaining Agreement receives pay.  These contributions are necessary to fund pension benefits being earned by covered employees by their work for Blens at the site.  Specifically, Article XXI-PENSION of the Collective Bargaining Agreement provides as follows:

> "The Employer shall contribute for each hour for which an employee covered by this Agreement is entitled to pay, to the Laborers' International Union of North America's National (Industrial) Pension Fund  in accordance with Addendum B to this Agreement."

69.     The Addendum A to the Collective Bargaining Agreement provides that the rate at which Blens is required to contribute to the Pension Fund is $2.84 per hour paid for employees at Tarrant County.  Addendum A was signed by Defendant Robin Brevard as the Chief Executive Officer.

70.     Addendum B to the Collective Bargaining Agreement provides, with regard to the Pension Fund as follows:

(a)     Paragraph A requires Blens to contribute to the Pension Fund "for each hour an employee covered by this Agreement is entitled to pay, including hours of paid vacation, paid holidays, and other periods for which pay is paid or owed to an employee."The obligation to contribute for an employee commences on the first day of the employee's employment in a job classification covered by the Collective Bargaining Agreement.

(b)     Paragraph B requires Blens to pay contributions on a calendar monthly

-32-

basis.  Specifically, Blens is required to pay to the Pension Fund contributions for employee hours in a particular month by the twentieth (20th) day of the following month.  This Section further requires Blens to submit to the Pension Fund monthly contribution reports with the contributions so that the Pension Fund can properly credit to the employees and verify the accuracy of the payment.

(c)    Paragraph C entitles the Pension Fund to have a certified public accountancy firm audit Blens' payroll and other records to verify the accuracy of contributions to the Pension Fund, verifying employee eligibility, and for other purposes necessary for administration of the Fund. Blens is also required to provide the Pension Fund with any and all truthful information necessary for administration of the Fund.

(d)    Paragraph E in the Collective Bargaining Agreement provides that if Blens fails to submit contributions or contributions reports to the Pension Fund when due, Blens shall be considered an employer in default and shall be subject to charges for interest, liquidated damages, attorneys fees, costs, audit fees and other costs of collection in accordance with the Pension Fund's Agreement and Declaration of Trust (hereinafter referred to as "the Pension Fund's Trust Agreement").   This Section further provides that the Pension Fund may take any and all lawful collection actions, including the commencement of legal proceedings, without regard to any grievance or

-33-

arbitration procedure of the Collective Bargaining Agreement.

(e)     The last paragraph provides that Blens accepts and agrees to be bound

by the Pension Fund's Trust Agreement.

71.     The Pension Fund's Trust Agreement (Delinquency Control Program

Section III Delinquency Procedures) provides, in pertinent part, as follows:

"C.     Delinquent employers shall be assessed the following
charges:

1.  Each employer carrying a contribution delinquency for thirty
(30) calendar days or more will automatically be assessed
interest on the delinquent amount at the rate of 1½% per
month for each month or part thereof from the date on
which the Employer became delinquent until the date on
which the delinquency is collected.  All interest
assessments will be immediately due and payable.  The
Fund Administrator will notify the Employer of the interest
charge.

2.  Each Employer whose delinquent status is referred to the
Fund Counsel for legal action shall, in addition to interest, be
charged liquidated damages in an amount equal to twenty
percent (20%) of the unpaid delinquent contributions as the
reasonably anticipated costs of administration and collection.
All liquidated damages shall be immediately due and
payable.  The Fund Administrator will notify the Employer in
writing of the assessment of liquidated damages.

3.  Each delinquent Employer that is audited pursuant to Part
III-B-3 hereof shall be charged for the actual cost of the
audit.  The Fund Administrator will notify the Employer of
the assessment of audit fees charged which shall be due
and payable immediately.

4.  In addition to interest and auditing charges, each Employer
against which legal action is taken to collect delinquent
contributions or other monies due the Fund shall be
charged and liable to the Fund for attorneys' fees and for
costs incurred by the Fund in taking such legal action, as

-34-

> well as for the liquidated damages assessed under Part
> III-C-2 hereof, and such other relief as may be available to
> the Fund under the Employee Retirement Income Security
> Act and other applicable law."

72.     As of the date of this Complaint, Blens' has failed to pay the contributions

owed to the Pension Fund for the August, September and October 2019 work periods.

Blens owes the Pension Fund $5,616.61 in contributions for the August 2019 work

period and $5,704.11 in contributions for the September 2019 work period.  The

Pension Fund estimates that the total amount of contributions owed for the October

2019 work period is **$5,803.65**.  Estimating the contributions owed to the Pension Fund

is necessary because Blens has failed to comply with its contractual and legal obligation

to submit monthly contribution reports detailing the hours worked by each employee

covered by the collective bargaining agreement.  The Pension Fund cannot accurately

calculate the contributions owed without the contribution reports.

73.     The contribution amount has been estimated based off of the average

number of hours reported to the Pension Fund on the last five report forms Blens

submitted to the Pension Fund.  The Pension Fund estimates that Blens' employees

worked 2,043.54 hours for October 2019, at a rate of $2.84 per hour worked and/or paid

to the employees covered by the collective bargaining agreement.  Basing the

contribution amounts on an estimate of the number of hours worked by Blens'

employees is necessary because the Defendants failed to comply with their contractual

and legal obligation to submit monthly contribution reports for the month.

74.     Blens is required by the Pension Fund's Agreement and Declaration of

-35-

Trust, as adopted by Blens in the Collective Bargaining Agreements, to pay interest on

past due contributions at the rate of 1.5% compounded per month from the date due to

the date paid.  As of December 1, 2019, the Pension Fund estimates that Blens' owes

**$1,104.22**  in accrued interest charges on past due contributions.  The accrued interest

amount is estimated due to Blens' failure to submit contribution report for October 2019.

Interest continues to accrue on unpaid amounts at the rate of 1.5% per month

compounded.

75.     In addition to the delinquent contributions and accrued interest, the

Pension Fund's Agreement and Declaration of Trust provides for penalties to be

assessed to employers that submit contributions by check that is not honored by the

bank.  The Pension Fund's Agreement and Declaration of Trust provides that the

penalty for checks that could not be cashed is ten percent (10%) of the contributions

owed up to a maximum of $500.  Blens has repeatedly submitted checks to the Pension

Fund that were not honored by the bank for insufficient money in the bank account on

which the check was drawn.  Blens owes the Pension Fund **$1,325.66** in penalties for

checks that were rejected by the bank covering the December 2018, April 2019 and

June 2019 work periods.

76.     By failing to pay these contributions, interest charges, and penalties to the

Pension Fund when due, and by failing to submit the contribution reports, Blens has

violated the Collective Bargaining Agreement, the terms of the Pension Fund including

its Trust Agreement, and ERISA Section 515.

-36-

77.     The Pension Fund has repeatedly demanded that Blens pay the

delinquent contributions.  As of the date of this Complaint, Blens has not complied.

78.     Blens has a continuing obligation to contribute to the Pension Fund, and

submit contribution reports, for the term of the Collective Bargaining Agreement under

federal labor laws.  Blens will also continue to accrue interest charges while the

contributions remain unpaid.  Based on Blens' conduct, it is reasonable to assume that

Blens will not pay the contributions and accrued interest charges until ordered to do so

by the Court.

79.     Blens received from the GSA contract payments intended to compensate

Blens for its contributions to the Pension Fund for the employees covered by the

Collective Bargaining Agreement in accordance with the labor standards regulatory

scheme of the Service Contract Act, 41 U.S.C. § 351, *et seq.*  When it fails to make

contributions to the Pension Fund for employees covered by the Collective Bargaining

Agreements, Blens is unjustly enriched at the expense of its employees and the Federal

Government as well as the Pension Fund.  Failure by Blens to timely pay contributions

to the Pension Fund for its employees constitutes a violation of the Service Contract

Act, Blens' government contract, and federal procurement regulations, and renders

Blens and its responsible officers liable for the unpaid amounts, termination of its

existing government contract, and debarment from eligibility for future government

contracts.

80.     Pursuant to the Collective Bargaining Agreement, the Pension Fund's

-37-

Trust Agreement, and ERISA Sections 502(a)(3), 502(g)(2) and 515, 29 U.S.C.

§§1132(a)(3), (g)(2), 1145, the Pension Fund is entitled to recover from Blens the

delinquent contributions and contribution reports, interest on the delinquent

contributions at the rate of one and one-half percent (1 ½%) per month, liquidated

damages (equal to the greater of the interest payable or 20% of the contributions),

attorneys' fees, auditing fees and all other costs of collection.

## FIFTH CAUSE OF ACTION
### (Blens Delinquent Health Fund Contributions and Reports)

81.     Plaintiffs incorporate and reallege herein each and every allegation of

paragraphs 1 through 80 to the same effect as if restated here in full, and further alleges

as follows.

82.     Blens is party to and contractually bound by a Collective Bargaining

Agreement with LIUNA Local 154 that sets terms and conditions of employment for

Blens employees who work at Tarrant County.  The Collective Bargaining Agreement is

effective from May 1, 2016 through May 14, 2020.

83.     The Collective Bargaining Agreement requires Blens to make

contributions to the Health Fund at a certain hourly rate for each hour for which an

employee covered by the Collective Bargaining Agreement receives pay.  These

contributions are necessary to fund health benefits being earned by covered employees

by their work for Blens at Tarrant County.  Specifically, Article XX-HEALTH AND

WELFARE of the Collective Bargaining Agreement provides as follows:

> "The Employer shall contribute for each hour for which an
> employee covered by this Agreement is entitled to pay, to the

-38-

> Laborers' International Union of North America's National
> (Industrial) Pension Fund in accordance with Addendum B to this
> Agreement."

84. The Addendum A to the Collective Bargaining Agreement provides the rate at which Blens is required to contribute to the Health Fund is $5.71 per hour paid for employees at Tarrant County. The Addendum A for the Collective Bargaining Agreement was signed by Defendant Robin Brevard as Chief Executive Officer.

85. Addendum B, Section 2, of the Collective Bargaining Agreement provides with regard to the Health Fund as follows:

(a) Paragraph A notifies Blens that each employee covered by the Collective Bargaining Agreement shall be covered by either Plan I or Plan II of the Health Fund subject to the plan's eligibility rules, and the Health Fund's right to withhold payment of benefits in the event that the Employer fails to make the required contributions.

(b) Paragraph B requires Blens to contribute to the Health Fund "for each hour an employee covered by this Agreement is entitled to pay, including hours of paid vacation, paid holidays, and other periods for which pay is paid or owed to an employee."The obligation to contribute for an employee commences on the first day of the employee's employment in a job classification covered by the Collective Bargaining Agreement.

(c) Paragraph C requires Blens to pay contributions on a calendar monthly basis. Specifically, Blens is required to pay to the Health Fund

-39-

contributions for employee hours in a particular month by the twentieth (20th) day of the following month.  This Section further requires Blens to submit to the Health Fund monthly contribution reports with the contribution payment so that the Health Fund can verify the accuracy of the payment.

(d)     Paragraph D entitles the Pension Fund to have a certified public accountancy firm audit Blens' payroll and other records to verify the accuracy of contributions to the Health Fund, verifying employee eligibility, and for other purposes necessary for administration of the Fund.  Blens is also required to provide the Health Fund with any and all truthful information necessary for administration of the Fund.

(e)     Paragraph F provides that if Blens fails to submit contributions or contributions reports to the Health Fund when due, Blens shall be considered an employer in default and shall be subject to charges for interest, liquidated damages, attorneys fees, costs, audit fees and other costs of collection in accordance with the Health Fund's Agreement and Declaration of Trust(hereinafter referred to as "the Health Fund's Trust Agreement").   This Section further provides that the Health Fund may take any and all lawful collection actions, including the commencement of legal proceedings, without regard to any grievance or arbitration procedure of the Collective Bargaining Agreement.

-40-

(f)     Paragraph H provides that Blens' accepts and agrees to be bound by the

Health Fund's Trust Agreement.

86.     The Health Fund's Trust Agreement (Article VI, Section 6.04) provides, in

pertinent part, as follows:

> DEFAULT IN PAYMENT: . . . In addition to any other
> remedies to which the Fund or the Board is entitled, any
> Employer which fails to pay contributions or other payments
> owed shall be liable to the Fund for interest at the rate of
> one-and-one-half percent (1 ½%) per month compounded
> from the due date through the date of payment, as well as
> for all expenses of collection incurred by the Fund, including
> attorneys' fees and court costs.  The Board is empowered to
> institute proceedings in law or equity, and to take any other
> action, to collect Contributions and all other payments due.
> If legal proceedings are initiated against an Employer in
> default, the Employer shall also be liable to the Fund for
> liquidated damages in an amount equal to twenty percent
> (20%) of the Contributions past due.

87.     As of the date of this Complaint, Blens' has failed to submit the required

contribution reports and failed to pay the contributions owed to the Health Fund for the

hours worked in August, September and October 2019.  Blens owes the Health Fund

$11,292.55 in contributions for the August 2019 work period and $11,468.48 for the

September 2019 work period.  The Health Fund estimates that total amount of

contributions owed for the October 2019 work period is **$11,668.61**.

88.     The contribution amounts for each month have been estimated based off

the average number of hours reported to the Health Fund on the last five report forms

Blens submitted to the Health Fund.  The Health Fund estimates that Blens' employees

worked 2,.043.54 hours in October 2019 at a rate of $5.71 per hour worked and or paid

-41-

to Blens' employees covered by the collective bargaining agreement. Basing the
contribution amounts on an estimate of the number of hours worked by Blens'
employees is necessary because the Defendants failed to comply with their contractual
and legal obligation to submit monthly contribution reports for the month.

89.     Blens is required by the Health Fund's Agreement and Declaration of
Trust, as adopted by Blens in the Collective Bargaining Agreements, to pay interest on
past due contributions at the rate of 1.5% compounded per month from the date due to
the date paid. As of December 1, 2019, the Health Fund estimates that Blens' owes
**$2,236.72** in accrued interest charges on past due contributions. The accrued interest
amount is estimated due to Blens' failure to submit contribution report for October 2019.
Interest continues to accrue on unpaid amounts at the rate of 1.5% per month
compounded.

90.     In addition to the delinquent contributions and accrued interest, the Health
Fund's Agreement and Declaration of Trust provides for penalties to be assessed to
employers that submit monthly contributions using a check that is not honored by the
bank. The Health Fund's Agreement and Declaration of Trust provides that the penalty
for checks that could not be cashed is ten percent (10%) of the contributions owed up to
a maximum of $500. Blens has repeatedly submitted checks to the Health Fund that
were not honored by the bank for insufficient money in the bank account on which the
check was drawn. Blens owes the Health Fund **$1,000.00** in penalties for checks that
were rejected by the bank covering the April 2019 and June 2019 work periods.

-42-

91.     By failing to pay these contributions, interest charges and penalties, and by failing to submit the required contribution reports to the Health Fund when due Blens has violated the Collective Bargaining Agreement, the terms of the Health Fund including its Trust Agreement, and ERISA Section 515.

92.     The Health Fund has repeatedly demanded that Blens pay the delinquent contributions.  As of the date of this Complaint, Blens has not complied.  As a result, employees of Blens will lose health care coverage and will continue to lack the health care coverage they are entitled to under the Collective Bargaining Agreement until Blens' has paid the contributions owed to the Health Fund to pay for those benefits.

93.     Blens has a continuing obligation to contribute to the Health Fund, and submit contribution reports, for the term of the Collective Bargaining Agreement under federal labor laws.  Blens will also continue to accrue interest charges while the contributions remain unpaid.  Based on Blens' conduct, it is reasonable to assume that Blens will not pay the contributions and accrued interest charges until ordered to do so by the Court.

94.     Blens received from the GSA contract payments intended to compensate Blens for its contributions to the Health Fund for the employees covered by the Collective Bargaining Agreement in accordance with the labor standards regulatory scheme of the Service Contract Act, 41 U.S.C. § 351, *et seq.*  When it fails to make contributions to the Health Fund for employees covered by the Collective Bargaining Agreements, Blens is unjustly enriched at the expense of its employees and the Federal

-43-

Government.  Failure by Blens to timely pay contributions to the Health Fund for its

employees constitutes a violation of the Service Contract Act, Blens' government

contract, and federal procurement regulations, and renders Blens and its responsible

officers liable for the unpaid amounts, termination of its existing government contract,

and debarment from eligibility for future government contracts.

95.    Pursuant to the Collective Bargaining Agreement, the Health Fund's

Trust Agreement, and ERISA Sections 502(a)(3), 502(g)(2) and 515, 29 U.S.C.

§§1132(a)(3), (g)(2), 1145, the Health Fund is entitled to recover from Blens the

delinquent contributions and contribution reports, interest on the delinquent

contributions at the rate of one and one-half percent (1 ½%) per month, liquidated

damages (equal to the greater of the interest payable or 20% of the contributions),

attorneys' fees, auditing fees and all other costs of collection.

## SIXTH CAUSE OF ACTION
### (Blens Delinquent Education Fund Contributions and Reports)

96.    Plaintiffs incorporate and reallege herein each and every allegation of

paragraphs 1 through 95 to the same effect as if restated here in full, and further alleges

as follows.

97.    Blens is party to and contractually bound by a Collective Bargaining

Agreement with LIUNA Local 154 that set terms and conditions of employment for Blens

employees who work at Tarrant County.  The Collective Bargaining Agreement is

effective from May 1, 2016 through May 14, 2020.

98.    The Collective Bargaining Agreements require Blens to make

-44-

contributions to the Education Fund at a certain hourly rate for each hour for which an

employee covered by the Collective Bargaining Agreements receives pay.  These

contributions are necessary to fund education and job training benefits being earned by

covered employees by their work for Blens at Tarrant County. Specifically, Article

XXII-SCETT FUND TRAINING of the Collective Bargaining Agreement provides that the

Employer shall contribute for each hour for which each employee covered by the

Agreement is entitled to pay, at the rate set in Addendum A and in accordance with

Addendum B. It further states that the Employer shall adopt the Education Fund's

Agreement and Declaration of Trust.

99.     The Addendum A to the Collective Bargaining Agreements provides

that effective August 1, 2017, the rate at which Blens is required to contribute to the

Education Fund is "$0.20 per hour paid" for employees at Tarrant County.  Addendum A

to the Collective Bargaining Agreement was signed by Defendants Robin Brevard as

the Chief Executive Officer.

100.     Addendum B, Section 3, of the Collective Bargaining Agreement provides

with regard to the Education Fund as follows:

(a)     Paragraph A requires Blens to contribute to the Education Fund "for each

hour an employee covered by this Agreement is entitled to pay, including

hours of paid vacation, paid holidays, and other periods for which pay is

paid or owed to an employee." The obligation to contribute for an

employee commences on the first day of the employee's employment in a

-45-

job classification covered by the Collective Bargaining Agreement.

(b)     Paragraph B requires Blens to pay contributions on a calendar monthly

basis.  Specifically, Blens is required to pay to the Education Fund

contributions for employee hours in a particular month by the twentieth

(20th) day of the following month.  This section further requires Blens to

submit to the Education Fund monthly contribution reports with the

contributions so that the Education Fund can properly credit the

employees and verify the accuracy of the payment.

(c)     Paragraph C entitles the Education Fund to have a certified public

accountancy firm audit Blens' payroll and other records to verify the

accuracy of contributions to the Education Fund, verifying employee

eligibility, and for other purposes necessary for administration of the Fund.

Blens is also required to provide the Education Fund with any and all

truthful information necessary for administration of the Fund.

(d)     Paragraph E provides that if Blens fails to submit contributions or

contributions reports to the Education Fund when due, Blens shall be

considered an employer in default and shall be subject to charges for

interest, liquidated damages, attorneys fees, costs, audit fees and other

costs of collection in accordance with the Education Fund's Agreement

and Declaration of Trust (hereinafter referred to as "the Pension Fund's

Trust Agreement").   This section further provides that the Education Fund

-46-

may take any and all lawful collection actions, including the

commencement of legal proceedings, without regard to any grievance or

arbitration procedure of the Collective Bargaining Agreement.

(e)     The last paragraph provides that Blens accepts and agrees to be bound

by the Education Fund's Trust Agreement.

101.     The Education Fund's Trust Agreement (Article V, Sections 3, 4 and 5)

requires the contributions and contribution report be submitted to the Education Fund by

the twentieth (20th) day of the month following the month in which the hours were

worked.  The Trust Agreement (Article V, Section 4) further provides as follows:

> DEFAULT IN PAYMENT.  Employers who fail to pay the
> contributions or other payments owed the Trust Fund when due may
> be expelled, at the Board's discretion, from participation in the Trust
> Fund.  In addition to any other remedies to which the Trust Fund (or
> its Board of Trustees) is entitled, any Employer which fails to pay
> contributions or other payments owed within thirty (30) days after the
> end of the month for which such contributions are due shall be liable
> to the Trust Fund for interest at the rate of one and one-half percent
> (1-1/2%) per month compounded from the due date through the date
> of payment, as well as for expenses of collection incurred by the
> Trust Fund, including attorneys' fees and court costs.  The Trustees
> are empowered to institute proceedings at law or equity, and to take
> any other action, to collect contributions and all other payments due.

102.     As of the date of this Complaint, Blens has failed to submit the required

contribution reports and has failed to pay the Education Fund the contributions owed for

hours worked in August, September and October 2019.  Blens owes the Education fund

$395.54 in contributions for the August 2019 work period and $401.70 in contributions

for the September 2019 work period.  The total amount of contributions estimated to be

-47-

owed for the October 2019 work period is **$408.71**.

103.    The contribution amounts for October 2019 have been estimated based off of the average number of hours reported to the Education Fund on the last five report forms Blens submitted to the Education Fund.  The Education Fund estimates that Blens' employees worked 2,043.54 hours in each month at a rate of $0.20 per hour worked and/or paid to Blens' employees covered by the Collective Bargaining Agreement.  Basing the contribution amounts on an estimate of the number of hours worked by Blens' employees is necessary because the Defendants failed to comply with their contractual and legal obligation to submit monthly contribution report for the month of October 2019.

104.    Blens is required by the Education Fund's Agreement and Declaration of Trust, as adopted by Blens in the Collective Bargaining Agreements, to pay interest on past due contributions at the rate of 1.5% compounded per month from the date due to the date paid.  As of December 1, 2019, the Education Fund estimates that Blens' owes **$43.24** in accrued interest charges on past due contributions.  The accrued interest amount is estimated due to Blens' failure to submit contribution reports for October 2019.  Interest continues to accrue on unpaid amounts at the rate of 1.5% per month compounded.

105.    In addition to the delinquent contributions and accrued interest, the Education Fund's Agreement and Declaration of Trust provides for penalties to be assessed to employers that submit monthly contributions using a check that is not

-48-

honored by the bank.  The Education Fund's Agreement and Declaration of Trust

provides that the penalty for checks that could not be cashed is ten percent (10%) of the

contributions owed up to a maximum of $500.  Blens has repeatedly submitted checks

to the Education Fund that were not honored by the bank for insufficient money in the

bank account on which the check was drawn.  Blens owes the Education Fund **$108.89**

in penalties for checks that were rejected by the bank covering the December 2018,

April 2019 and June 2019 work periods.

106.    By failing to pay these contributions, interest charges, and penalties, and

by failing to submit the required contribution reports to the Education Fund when due,

Blens has violated the Collective Bargaining Agreement, the terms of the Education

Fund including its Trust Agreement, and ERISA Section 515.

107.    The Education Fund has repeatedly demanded that Blens pay the

delinquent contributions.  As of the date of this Complaint, Blens has not complied.

108.    Blens has a continuing obligation to contribute to the Education Fund, and

submit contribution reports, for the term of the Collective Bargaining Agreement under

federal labor laws.  Blens will also continue to accrue interest charges while the

contributions remain unpaid.  Based on Blens' conduct, it is reasonable to assume that

Blens will not pay the contributions and accrued interest charges until ordered to do so

by the Court.

109.    Blens received from the GSA contract payments intended to compensate

Blens for its contributions to the Education Fund for the employees covered by the

-49-

Collective Bargaining Agreement in accordance with the labor standards regulatory scheme of the Service Contract Act, 41 U.S.C. § 351, *et seq.*  When it fails to make contributions to the Education Fund for employees covered by the Collective Bargaining Agreements, Blens is unjustly enriched at the expense of its employees and the Federal Government.  Failure by Blens to timely pay contributions to the Education Fund for its employees constitutes a violation of the Service Contract Act, Blens' government contract, and federal procurement regulations, and renders Blens and its responsible officers liable for the unpaid amounts, termination of its existing government contract, and debarment from eligibility for future government contracts.

110.    Pursuant to the Collective Bargaining Agreement, the Education Fund's Trust Agreement, and ERISA Sections 502(a)(3), 502(g)(2) and 515, 29 U.S.C. §§1132(a)(3), (g)(2), 1145, the Education Fund is entitled to recover from Blens the delinquent contributions and contribution reports, interest on the delinquent contributions at the rate of one and one-half percent (1 ½%) per month, liquidated damages (equal to the greater of the interest payable or 20% of the contributions), attorneys' fees, auditing fees and all other costs of collection.

### SEVENTH CAUSE OF ACTION
### (Blens Solutions, RBNR Management Group, and RBNR Solutions as Alter Egos, Joint Employers or Members of a Controlled Group)

111.    Plaintiff incorporates and realleges herein each and every allegation of paragraphs 1 through 110 to the same effect as if restated here in full, and further alleges as follows.

-50-

112.   Upon information and belief, Blens, RBNR Management, and RBNR Solutions are the same company for all intents and purposes.

113.   Upon information and belief, Blens, RBNR Management and RBNR Solutions have substantially identical management, business purpose, operation, equipment, customers, office staff, common finances, supervision and ownership.  They are treated, managed, operated and represented to the public as a single entity.

114.   Blens, RBNR Management and RBNR Solutions have a common owner and President, Defendant Robin Brevard.

115.   Blens, RBNR Management and RBNR Solutions have a common Chief Financial Officer, Defendant Ali Rassoulpour.

116.   Upon information and belief, Blens, RBNR Management and RBNR Solutions operate primarily out of the same office location at 702 Russell Ave Suite 305, Gaithersburg, Maryland.  Blens, RBNR Management and RBNR Solutions share office resources and office staff.

117.   Upon information and belief, Blens, RBNR Management and RBNR Solutions share a bank account and all money received from contracts is comingled and shared by all three companies.

118.   Blens, RBNR Management and RBNR Solutions operate as if they are one employer and are alter egos of one another.  Adherence to the fiction of a separate existence of RBNR Solutions as an entity separate and distinct from Blens and RBNR Management would permit abuse of corporate privilege and would sanction fraud and

-51-

promote injustice.

119.     Defendant Blens and Defendant RBNR Management are party to the

Collective Bargaining Agreement with LIUNA for employees working at the Court

Buildings as the legal equivalent of RBNR Solutions and are therefore jointly and

severally liable for RBNR Solutions' delinquent contributions and delinquent interest

payments as the alter ego of RBNR Solutions.

120.     Defendant RBNR Solutions and Defendant RBNR Management are party

to the Collective Bargaining Agreement with LIUNA for employees working at Tarrant

County as the legal equivalent of Blens Solutions and are therefore jointly and severally

liable for Blens' delinquent contributions and delinquent interest payments as the alter

ego of Blens.

121.     Alternatively, Defendants Blens, RBNR Management, and RBNR

Solutions are joint employers and liable for the delinquent contributions owed to the

Pension Fund, the Health Fund and the Education Fund.

122.     Defendants Robin Brevard, Ali Rassoulpour and Nayereh Rassoulpour are

officers and directors of Blens, RBNR Management and RBNR Solutions.  They

exercise management control over employees covered by the Collective Bargaining

Agreements on behalf of Blens, RBNR Management and RBNR Solutions.

123.     At all relevant times Defendants Robin Brevard, Ali Rassoulpour and

Nayereh Rassoulpour, as officers and directors of Blens, RBNR Management and

RBNR Solutions, had knowledge or notice of Blens, RBNR Management and RBNR

-52-

Solutions' obligations to the Pension Fund, the Health Fund and the Education Fund.

124.    RBNR Management's Articles of Organization states that the purpose of the company is to allow members including Blens to compete for service contracts in the states.

125.    Alternatively, Blens, RBNR Management and RBNR Solutions are members of a control group of businesses within the meaning of ERISA Section 4001(b), 29 U.S.C. §1301(b).

126.    Blens, RBNR Management and RBNR Solutions are under common control by the Defendants Robin Brevard, Ali Rassoulpour and Nayereh Rassoulpour. Blens, RBNR Management and RBNR Solutions should be treated as a single employer for purposes of the delinquent contributions owed to the Pension Fund, the Health Fund and the Education Fund.

**EIGHTH CAUSE OF ACTION**
**(Personal Liability of Defendant Robin Brevard**
**and Defendant Nareyeh Rassoulpour)**

127.    Plaintiffs incorporate and reallege herein each and every allegation of paragraphs 1 through 126 to the same effect as if restated here in full, and further alleges as follows.

128.    RBNR Solutions is a Limited Liability Partnership.  Defendant Robin Brevard and Defendant Nareyeh Rassoulpour are Partners of RBNR Solutions.

129.    Defendant Robin Brevard and Defendant Nareyeh Rassoulpour both signed the Collective Bargaining Agreement and Addendums with the Court Buildings in

-53-

California as Partners of RBNR Solutions.

130.    Defendant Robin Brevard and Defendant Nareyeh Rassoulpour shared in the management of RBNR Solutions including the authority and control over payment or nonpayment of contributions owed to the Plaintiffs.

131.    As Partners of RBNR Solutions, Defendant Robin Brevard and Defendant Nareyeh Rassoulpour are personally responsible, jointly and severally, for the debts of RBNR Solutions, including the delinquent contributions and interest owed to the Plaintiffs.

132.    Under the circumstances, a limitation on Defendant Robin Brevard and Defendant Nareyeh Rassoulpour's personal liability should not be observed because Defendant Robin Brevard and Defendant Nareyeh Rassoulpour disregarded the limitations of the Partnership in their operation of RBNR Solutions.

## NINTH CAUSE OF ACTION
### (Breach of Fiduciary Duty and Prohibited Transactions by Defendant Robin Brevard)

133.    Plaintiffs incorporate and reallege herein each and every allegation of paragraphs 1 through 132 to the same effect as if restated here in full, and further alleges as follows.

134.    RBNR Solutions' and Blens' performance of its government contract at the Court Buildings is subject to the Service Contract Act.  That Act requires RBNR Solutions and Blens to compensate its employees working at the Court Buildings no less than in accordance with a prevailing wage determination issued by the U.S.

-54-

Department of Labor's Wage and Hour Division in accordance with the Act.  The

applicable wage determination has required RBNR Solutions and Blens to, among other

things, make certain contributions for the employees to the Pension Fund.

135.    RBNR Solutions and Blens, under their contracts, received payments

from the General Services Administration with which to compensate their employees at

the Court Buildings in accordance with the wage determination and the Service Contract

Act.

136.    RBNR Solutions and Blens was required by their Collective Bargaining

Agreements to use the payments it received from the General Services Administration

to make contributions for the employees to the Pension Fund.  Contributions to the

Pension Fund are substitute wages to the employees.  The employees, through LIUNA,

collectively bargained to have RBNR Solutions and Blens pay a certain amount of

contributions to the Pension Fund in lieu of cash wages.

137.    The unpaid contributions and accrued interest charges owed to the

Pension Fund are assets of the Pension Fund for purposes of ERISA.

138.    The payments received by RBNR Solutions and Blens from the General

Services Administration with which to pay the contributions owed to the Pension Fund

are assets of the Pension Fund for purposes of ERISA.

139.    At all material times, Defendant Robin Brevard, as owner and President,

has had discretionary authority and control over RBNR Solutions' and Blens' payment

or non-payment of the contributions and interest charges owed to the Pension Fund.

-55-

As such, he is a fiduciary with respect to the Pension Fund within the meaning of

Section 3 (21) of ERISA (29 U.S.C. §§1002(21)), and a party in interest with respect to

the Pension Fund within the meaning of Sections 3 (14)(A), (C) and (E) of ERISA (29

U.S.C. §§1002 (14)(A), (C) and (E)).

140.    At all material times, Defendant Robin Brevard has had knowledge of

RBNR Solutions' and Blens' obligations to the Pension Fund under their Collective

Bargaining Agreements, government contracts, and the Service Contract Act.

Defendant Robin Brevard signed the Collective Bargaining Agreement and the

Addendum A and B setting the rate at which RBNR Solutions and Blens had to

contribute to the Pension Fund.

141.    Defendant Robin Brevard has exercised his discretionary authority

and control to withhold from the Pension Fund the contributions and interest charges

owed to it.  By doing so, he has deprived the Pension Fund of its assets or the benefit of

its assets and has deprived RBNR Solutions' and Blens' employees of compensation

and benefits to which they are entitled for their work.

142.    Defendant Robin Brevard has converted assets of the Pension Fund to

the use and benefit of his companies, RBNR Solutions and Blens, and thereby unjustly

enriched and benefited the companies and himself as the owner.

143.    Defendant Robin Brevard's acts and omissions constitute violations of

his fiduciary duties under ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), and

prohibited transactions in violation of ERISA Sections 406(a) and 406(b), 29 U.S.C.

-56-

§§1106(a),(b).

144.    Defendant Robin Brevard is personally liable to the Pension Fund under ERISA Sections 409, 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1109, 1132(a)(2), (a)(3), for its losses including all unpaid contributions, accrued interest charges, and unfunded benefits earned by RBNR Solutions' and Blens' employees.  Sections 3 (14)(A), (C) and (E) of ERISA (29 U.S.C. §§1002 (14)(A), (C) and (E)).

## TENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty and Prohibited Transactions by Defendant Ali Rassoulpour)

145.    Plaintiffs incorporate and reallege herein each and every allegation of paragraphs 1 through 144 to the same effect as if restated here in full, and further alleges as follows.

146.    RBNR Solutions' and Blens' performance of their government contracts at the Court Buildings are subject to the Service Contract Act.  That Act requires RBNR Solutions and Blens to compensate its employees working at the Court Buildings no less than in accordance with a prevailing wage determination issued by the U.S. Department of Labor's Wage and Hour Division in accordance with the Act.  The applicable wage determination has required RBNR Solutions and Blens to, among other things, make certain contributions for the employees to the Pension Fund.

147.    RBNR Solutions and Blens, under their contracts, received payments from the General Services Administration with which to compensate its employees at the Court Buildings in accordance with the wage determination and the Service Contract

-57-

Act.

148.    RBNR Solutions and Blens were required by their Collective Bargaining Agreements to use the payments they received from the General Services Administration to make contributions for the employees to the Pension Fund. Contributions to the Pension Fund are substitute wages to the employees.  The employees, through LIUNA, collectively bargained to have RBNR Solutions and Blens pay a certain amount of contributions to the Pension Fund in lieu of cash wages.

149.    The unpaid contributions and accrued interest charges owed to the Pension Fund are assets of the Pension Fund for purposes of ERISA.

150.    The payments received by RBNR Solutions and Blens from the General Services Administration with which to pay the contributions owed to the Pension Fund are assets of the Pension Fund for purposes of ERISA.

151.    At all material times, Defendant Ali Rassoulpour, as Vice President and Chief Financial Officer, has had discretionary authority and control over RBNR Solutions' and Blens' payment or non-payment of the contributions and interest charges owed to the Pension Fund.   As such, he is a fiduciary with respect to the Pension Fund within the meaning of Section 3 (21) of ERISA (29 U.S.C. §§1002(21)), and a party in interest with respect to the Pension Fund within the meaning of Sections 3 (14)(A), (C) and (E) of ERISA (29 U.S.C. §§1002 (14)(A), (C) and (E)).

152.    At all material times, Defendant Ali Rassoulpour has had knowledge of RBNR Solutions' and Blens' obligations to the Pension Fund under their Collective

-58-

Bargaining Agreements, government contracts, and the Service Contract Act.

153.   Defendant Ali Rassoulpour has exercised his discretionary authority and control as the Chief Financial Officer to withhold from the Pension Fund the contributions and interest charges owed to it.  By doing so, he has deprived the Pension Fund of its assets or the benefit of its assets and has deprived RBNR Solutions' and Blens' employees of compensation and benefits to which they are entitled for their work.

154.   Defendant Ali Rassoulpour has converted assets of the Pension Fund to the use and benefit of his companies, RBNR Solutions and Blens, and thereby unjustly enriched and benefited the company and himself as the owner.

155.   Defendant Ali Rassoulpour's acts and omissions constitute violations of his fiduciary duties under ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), and prohibited transactions in violation of ERISA Sections 406(a) and 406(b), 29 U.S.C. §§1106(a),(b).

156.   Defendant Ali Rassoulpour is personally liable to the Pension Fund under ERISA Sections 409, 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1109, 1132(a)(2), (a)(3), for its losses including all unpaid contributions, accrued interest charges, and unfunded benefits earned by RBNR Solutions' and Blens' employees.  Sections 3 (14)(A), (C) and (E) of ERISA (29 U.S.C. §§1002 (14)(A), (C) and (E)).

### ELEVENTH CAUSE OF ACTION
**(Breach of Fiduciary Duty and Prohibited Transactions
by Defendant Nayereh Rassoulpour)**

157.   Plaintiffs incorporate and reallege herein each and every allegation of

-59-

paragraphs 1 through 156 to the same effect as if restated here in full, and further alleges as follows.

158.    RBNR Solutions' and Blens' performance of their government contracts at the Court Buildings are subject to the Service Contract Act.  That Act requires RBNR Solutions and Blens to compensate their employees working at the Court Buildings no less than in accordance with a prevailing wage determination issued by the U.S. Department of Labor's Wage and Hour Division in accordance with the Act.  The applicable wage determination has required RBNR Solutions and Blens to, among other things, make certain contributions for the employees to the Pension Fund.

159.    RBNR Solutions and Blens, under their contracts, received payments from the General Services Administration with which to compensate their employees at the Court Buildings in accordance with the wage determination and the Service Contract Act.

160.    RBNR Solutions and Blens were required by their Collective Bargaining Agreements to use the payments received from the General Services Administration to make contributions for their employees to the Pension Fund.  Contributions to the Pension Fund are substitute wages to the employees.  The employees, through LIUNA, collectively bargained to have RBNR Solutions and Blens pay a certain amount of contributions to the Pension Fund in lieu of cash wages.

161.    The unpaid contributions and accrued interest charges owed to the Pension Fund are assets of the Pension Fund for purposes of ERISA.

**-60-**

162.    The payments received by RBNR Solutions and Blens from the General Services Administration with which to pay the contributions owed to the Pension Fund are assets of the Pension Fund for purposes of ERISA.

163.    At all material times, Defendant Nayereh Rassoulpour, as a Partner and officer, has had discretionary authority and control over RBNR Solutions' and Blens' payment or non-payment of the contributions and interest charges owed to the Pension Fund.  As such, she is a fiduciary with respect to the Pension Fund within the meaning of Section 3 (21) of ERISA (29 U.S.C. §§1002(21)), and a party in interest with respect to the Pension Fund within the meaning of Sections 3 (14)(A), (C) and (E) of ERISA (29 U.S.C. §§1002 (14)(A), (C) and (E)).

164.    At all material times, Defendant Nayereh Rassoulpour has had knowledge of RBNR Solutions' and Blens' obligations to the Pension Fund under their Collective Bargaining Agreement, its government contract, and the Service Contract Act. Defendant Nayereh Rassoulpour signed the Collective Bargaining Agreement and the Addendum A and B setting the rate at which RBNR Solutions had to contribute to the Pension Fund.

165.    Defendant Nayereh Rassoulpour has exercised his discretionary authority and control to withhold from the Pension Fund the contributions and interest charges owed to it.  By doing so, she has deprived the Pension Fund of its assets or the benefit of its assets and has deprived RBNR Solutions' and Blens' employees of compensation and benefits to which they are entitled for their work.

-61-

166.   Defendant Nayereh Rassoulpour has converted assets of the Pension Fund to the use and benefit of her companies, RBNR Solutions and Blens, and thereby unjustly enriched and benefited the companies and herself as a Partner.

167.   Defendant Nayereh Rassoulpour's acts and omissions constitute violations of her fiduciary duties under ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), and prohibited transactions in violation of ERISA Sections 406(a) and 406(b), 29 U.S.C. §§1106(a),(b).

168.   Defendant Nayereh Rassoulpour is personally liable to the Pension Fund under ERISA Sections 409, 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1109, 1132(a)(2), (a)(3), for its losses including all unpaid contributions, accrued interest charges, and unfunded benefits earned by RBNR Solutions' and Blens' employees.  Sections 3 (14)(A), (C) and (E) of ERISA (29 U.S.C. §§1002 (14)(A), (C) and (E)).

**TWELFTH CAUSE OF ACTION**
**Racketeer Influenced And Corrupt Organizations Act:**
**Conducting the Affairs of the Enterprise Through a Pattern of**
**Racketeering Activity of Mail and/or Wire Fraud**
**(Against All Defendants)**

169.   Plaintiffs incorporate and reallege herein each and every allegation of paragraphs 1 through 168 to the same effect as if restated here in full, and further alleges as follows.

**I.     THE ENTERPRISE**

170.   Each Defendant was, at all relevant times, a "person" within the meaning of 18 U.S.C. § 1961(3).  Defendant Ali Rassoulpour along with the other Defendants

-62-

formed an associated-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) ("the Enterprise").

171.   From approximately May 2016, continuing through the date of the filing of this Complaint, the Enterprise formed by all of the Defendants in concert engaged in activities which affected interstate and foreign commerce.  Defendants, and others known and unknown, being persons employed by and associated with the Enterprise, did unlawfully, knowingly and intentionally conspire, combine, confederate and agree together to conduct the affairs of the Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

172.   Defendants operated the Enterprise to defraud the Pension Fund, the Health Fund and the Education Fund out of money and to unjustly enrich themselves.

173.   From no later than May 2016 continuing through the date of the filing of this Complaint, Ali Rassoulpour, Robin Brevard, and Nayereh Rassoulpour, RBNR Solutions, Blens and RBNR Management, each of them individually, and together with others known and unknown to Plaintiffs, acting in concert, were each employed by or associated with the Enterprise and have in the past, continuously and continue to, in an ongoing manner, knowingly and intentionally conduct the activities of the Enterprise, directly or indirectly, through a continued pattern of racketeering activity consisting of numerous acts of racketeering.  Their actions include multiple, related acts in violation of the following provisions of the United States Code: 18 U.S.C. §§ 1341 and 1343.

-63-

These violations were and are in furtherance of the Enterprise's ongoing schemes to defraud the Pension Fund,  Health Fund, Education Fund, and others of money and property and/or to unjustly enrich themselves.

174.    From no later than May 2016, the Enterprise has existed separate and apart from Defendants' racketeering acts and their conspiracy to commit such acts.  The Enterprise has an ascertainable structure and purpose beyond the scope and commission of Defendants' predicate acts.

## II.    THE PATTERN OF RACKETEERING ACTIVITY AND PREDICATE ACTS OF MAIL AND/OR WIRE FRAUD

175.    The Enterprise as described herein is at all relevant times a continuing enterprise because it remains in existence and continues to execute schemes to defraud the Pension Fund, Health Fund and Education Fund and unjustly enrich Defendants.  The conduct of the Enterprise has continued from approximately May 2016 through the date of this Complaint and threatens to continue into the future.

176.    The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat of continuing criminal activity.  Such activity consists of multiple acts of racketeering by Defendants, is interrelated, not isolated, and is perpetrated for the same or similar purposes by the same persons. Such activity extends over a substantial period of time, up to and potentially beyond the date of this Complaint. Such activities occurred after the effective date of 18 U.S.C. §§ 1961 *et seq*., and the last such act occurred within 10 years after the commission of a prior act of racketeering activity.  As detailed below, these

-64-

racketeering activities include multiple repeated acts of mail fraud (18 U.S.C. § 1341) and/or wire fraud (18 U.S.C. § 1343).

177.    Defendant Ali Rassoulpour is the Chief Financial Officer of both RBNR Solutions and Blens.  As Chief Financial Officer, Defendant Ali Rassoulpour has at all times had control over the finances and bank accounts of both companies.  Defendant Ali Rassoulpour has had full knowledge of RBNR Solutions' and Blens' monthly contribution obligations to the Pension Fund, the Health Fund and the Education Fund.

178.    As the CFO, Defendant Ali Rassoulpour was responsible for signing and submitting the monthly contribution reports detailing the hours worked by each employee covered by the Collective Bargaining Agreements and for submitting monthly contributions by check.  Defendant Ali Rassoulpour signed each check submitted to the Pension Fund, the Health Fund and the Education Fund.  After Defendant Ali Rassoulpour signed the monthly checks, he would mail the checks from RBNR Solutions' and Blens' office in Gaithersburg, Maryland to the Pension Fund, the Health Fund and the Education Fund's joint administrative office in Washington, D.C.

179.    Upon information and belief, Defendant Ali Rassoulpour, in concert with the other Defendants, repeatedly sent contribution checks to the Funds that were not honored by the bank for insufficient money in the bank account.  Between May 2016 and October 2019 the Pension Fund has records of twenty (20) checks that Defendant Ali Rassoulpour sent on behalf of RBNR Solutions and Blens that were not honored by the bank.  Most recently, Defendant Ali Rassoulpour submitted checks that were not

-65-

honored by the bank on behalf of Blens for the December 2018, April 2019 and June 2019 work periods.  Defendant Ali Rassoulpour recently submitted checks that were not honored by the bank on behalf of RBNR Solutions for the June 2019 and August 2019 work periods.

180.   Defendant Ali Rassoulpour submitted a check for $3,541.33 (check number 1358) on behalf of Blens to cover the contributions due to the Pension Fund and Education Fund for the December 2018 work period.  The check was dated July 31, 2019 and signed by Defendant Ali Rassoulpour. It was sent by United States mail from Blens' office in Maryland to the shared administrative office of the Pension Fund and Education Fund.  The Funds' staff attempted to deposit the check on August 8, 2019 and the check was rejected by the bank for insufficient funds.

181.   Defendant Ali Rassoulpour submitted a check for $18,340.16 (check number 1326) on behalf of Blens to cover the contributions due to the Pension Fund, Health Fund and Education Fund for the April 2019 work period.  The check was dated May 13, 2019 and signed by Defendant Ali Rassoulpour.  It was sent by United States mail from Blens' office in Maryland to the shared administrative office of the Pension Fund, Health Fund and Education Fund.  The Funds' staff attempted to deposit the check on May 28, 2019 and the check was rejected by the bank for insufficient funds.

182.   Defendant Ali Rassoulpour submitted a check for $18,153.07 (check number 1350) on behalf of Blens to cover the contributions due to the Pension Fund, Health Fund and Education Fund for the June 2019 work period.  The check was dated

-66-

July 10, 2019 and signed by Defendant Ali Rassoulpour.  It was sent by United States

mail from Blens' office in Maryland to the shared administrative office of the Pension

Fund, Health Fund and Education Fund.  The Funds' staff attempted to deposit the

check on July 24, 2019 and the check was rejected by the bank for insufficient funds.

183.    Defendant Ali Rassoulpour submitted a check for $16,165.74 (check

number 2453) on behalf of RBNR Solutions to cover the contributions due to the

Pension Fund, Health Fund and Education Fund for the June 2019 work period.  The

check was dated July 8, 2019 and signed by Defendant Ali Rassoulpour.  It was sent by

United States mail from RBNR Solutions' office in Maryland to the shared administrative

office of the Pension Fund, Health Fund and Education Fund.  The Funds' staff

attempted to deposit the check on July 24, 2019 and the check was rejected by the

bank for insufficient funds.

184.    Defendant Ali Rassoulpour submitted a check for $16,977.43 (check

number 2494) on behalf of RBNR Solutions to cover the contributions due to the

Pension Fund, Health Fund and Education Fund for the August 2019 work period.  The

check was dated September 19, 2019 and signed by Defendant Ali Rassoulpour.  It was

sent by United States mail from RBNR Solutions' office in Maryland to the shared

administrative office of the Pension Fund, Health Fund and Education Fund.  The

Funds' staff attempted to deposit the check on November 4, 2019 and the check was

rejected by the bank for insufficient funds.

185.    Defendant Ali Rassoulpour submitted a check for $13,300.71 (check

number 2385) on behalf of RBNR Solutions to cover the contributions due to the

Pension Fund, Health Fund and Education Fund for the February 2019 work period.

The check was dated March 13, 2019 and signed by Defendant Ali Rassoulpour.   It

was sent by United States mail from RBNR Solutions' office in Maryland to the shared

administrative office of the Pension Fund, Health Fund and Education Fund.  The

Funds' staff attempted to deposit the check on March 22, 2019 and the check was

rejected by the bank for insufficient funds.

186.    Defendant Ali Rassoulpour submitted a check for $15,809.35 (check

number 1300) on behalf of Blens to cover the contributions due to the Pension Fund,

Health Fund and Education Fund for the February 2019 work period. The check was

dated March 13, 2019 and signed by Defendant Ali Rassoulpour.   It was sent by United

States mail from Blens' office in Maryland to the shared administrative office of the

Pension Fund, Health Fund and Education Fund.  The Funds' staff attempted to deposit

the check on March 22, 2019 and the check was rejected by the bank for insufficient

funds.

187.    Defendant Ali Rassoulpour submitted a check for $8,021.74 (check

number 1301) on behalf of Blens to cover the contributions due to the Pension Fund,

Health Fund and Education Fund for the December 2018 work period. The check was

dated March 13, 2019 and signed by Defendant Ali Rassoulpour.   It was sent by United

States mail from Blens' office in Maryland to the shared administrative office of the

Pension Fund, Health Fund and Education Fund.  The Funds' staff attempted to deposit

**-68-**

the check on March 22, 2019 and the check was rejected by the bank for insufficient funds.

188.    Defendant Ali Rassoulpour submitted a check for $11,962.44 (check number 1164) on behalf of Blens to cover the contributions due to the Pension Fund, Health Fund and Education Fund for the January 2018 work period. The check was dated February 28, 2018 and signed by Defendant Ali Rassoulpour.   It was sent by United States mail from Blens' office in Maryland to the shared administrative office of the Pension Fund, Health Fund and Education Fund.  The Funds' staff attempted to deposit the check on March 7, 2018 and the check was rejected by the bank for insufficient funds.

189.    Defendant Ali Rassoulpour submitted a check for $11,176.90 (check number 2082) on behalf of RBNR Solutions for the June 2017 work period.  The check was dated August 8, 2017 and signed by Defendant Ali Rassoulpour.   It was sent by United States mail from RBNR Solutions' office in Maryland to the shared administrative office of the Pension Fund, Health Fund and Education Fund.  The Funds' staff attempted to deposit the check on September 7, 2017 and the check was rejected by the bank for insufficient funds.

190.    On October 29, 2019, the Funds' staff attempted to deposit a check from RBNR Solutions for the contributions due to the Pension Fund, the Health Fund and the Education Fund for the August 2019 work period. The check was for $16,977.43 (check number 2494).  The check was rejected by the bank for insufficient money in the bank

-69-

account on which the check was drawn.  The Pension Fund's staff contacted Defendant Ali Rassoulpour by phone regarding the check and he told the staff member to try to deposit the check again in a few days when the money would be available in the bank account.  On November 4, 2019, the Funds' staff attempted to deposit the check again and the check once again was rejected by the bank for insufficient money in the bank account.  The Pension Fund's staff contacted Defendant Ali Rassoulpour by phone again and demanded payment be promptly made by bank wire transfer into the Pension Fund's bank account.  Defendant Ali Rassoulpour made oral representations that the money would be wired within a few days.  The wire transfer was not received and contributions for August 2019 remain unpaid.

191.   Upon information and belief, Defendant Ali Rassoulpour was aware at the time he wrote, signed and sent each check to the Funds that the bank accounts on which the checks were drawn did not have the money available to cover the amounts written on the checks. Defendant Ali Rassoulpour intentionally signed and sent fraudulent checks on behalf of RBNR Solutions and Blens.

192.   Upon information and belief, Defendant Ali Rassoulpour's fraudulent actions were on behalf of, and with the full knowledge, of Defendants Robin Brevard and Nayereh Rassoulpour in order to unjustly enrich themselves and benefit their jointly owed companies RBNR Solutions, RBNR Management and Blens.

193.   The Pension Fund, Health Fund and Education Fund's staff repeatedly contacted Defendant Ali Rassoulpour by telephone, by email and/or by letter after

-70-

attempting to deposit each check and having each one rejected by the bank.  Defendant Ali Rassoulpour frequently called the administrative office of the Funds and asked the Contributions Manager to wait a few days and then resubmit the check to the bank when the money would be available, thereby acknowledging that the money was not available at the time he wrote the check.  Alternatively, Defendant Ali Rassoulpour would send a new check to the Funds by United States  mail.  The new check would arrive at the Funds' administrative office several weeks or months after the money was due to the Funds.  By sending new checks, Defendant Ali Rassoulpour would buy additional time to get the money owed into the bank account on which the check was drawn. Occasionally the secondary checks were also not honored by the bank.

194.    The Funds also engaged legal counsel to contact Defendant Ali Rassoulpour regarding the repeated submission of fraudulent checks.  Defendant Ali Rassoulpour was repeatedly warned by letter, by phone and by email that his scheme was fraudulent and possibly illegal.  In August 2019, the Funds' legal counsel sent a letter demanding that all future monthly contributions be sent by certified check to ensure the checks that were being received could be deposited in the bank.

195.    Defendant Ali Rassoulpour communicated with the Fund Office and with the Funds' legal counsel regarding fraudulent checks sent to the Funds by phone and by email.  The phone calls were used in furtherance of his scheme to defraud the Funds because during these calls he would make oral representations to the Funds that the checks could be resubmitted in a few days when the money was available, or he would

-71-

agree to send the money by wire transfer since the original check could not be

deposited, or he would agree to mail the Funds a new check.   During these calls

Defendant Ali Rassoulpour would also provide explanations as to why the money was

not available at the time the checks were mailed.  The Funds would rely on the

statements made during the calls with Defendant Ali Rassoulpour and expect either that

the money would be available when the checks were resubmitted to the bank or that a

wire transfer or new check would be forthcoming.

196.   Defendants exhibited a pattern of submitting fraudulent checks to the

Funds over several years despite repeated warnings from the Funds.  Upon information

and belief, Defendants had a scheme to defraud the Funds by sending checks that they

knew would not be honored by the bank at the time they were signed and sent.  Upon

information and belief, Defendants' fraudulent check scheme was meant to mislead the

Funds and unjustly enrich the Defendants.  Upon information and belief, the scheme

was intended to buy time for RBNR Solutions and Blens to get enough money to pay

the monthly contributions owed to the Funds.  By submitting fraudulent checks at the

time the money was owed, the Funds were led to believe the checks could be deposited

and that the pension credits, health care coverage, and education benefits for the month

had been timely paid for by RBNR Solutions and Blens and that benefits could be

provided to their employees.  Defendants did so knowingly and intentionally send

fraudulent checks to the Funds in hopes they would believe the money owed had been

timely received and thereby induce the Funds to provide benefits to Defendants'

employees.  When the checks were not honored by the bank, the Funds were put in the

position of denying health care coverage and educational benefits to Defendants'

employees.  The fraudulent check scheme also worked as a way to avoid penalties and

interest assessed on late payments to the Funds.

197.    The Defendants' fraudulent conduct towards the Plaintiffs includes, but is

not limited, to each such instance detailed above.  Defendant Ali Rassoulpour used the

United States mail in furtherance of his scheme to defraud the Funds by mailing

fraudulent checks that could not be cashed to the Funds' administrative office and

communicating with the Funds about those fraudulent checks.  As stated above, the

substantial administration of both RBNR Solutions and Blens was in Gaithersburg,

Maryland.  Checks sent from Defendant Ali Rassoulpour were sent from RBNR

Solutions' and Blens' office in Gaithersburg, Maryland to the Pension Fund, Health Fund

and Education Fund's joint administrative office in Washington, D.C.  Each

mailing/wiring of a check and communication in furtherance of the fraudulent scheme is

a violation of the federal mail fraud statute, 18 USC § 1341, or the federal wire fraud

statute, 18 U.S.C. § 1343, and is an independent predicate act under 18 U.S.C. § 1961.

198.    Defendants have over a number of years displayed a pattern of

racketeering activity, and has knowingly and intentionally made false representations to

the Pension Fund, the Health Fund and the Education Fund.  The history and pattern of

behavior, and repeated warnings that were ignored make it likely that Defendants intend

to continue this fraudulent scheme without Court intervention.

-73-

199.    As stated above, the money owed to the Funds for monthly contribution payments was paid to RBNR Solutions and Blens by the U.S. Government for contracts at the Court House Buildings.  Defendant Ali Rassoulpour as the CFO was responsible for the handling of money coming in from the U.S. Government and for sending out the portion of that money owed to the Funds each month.  To the extent Defendant Ali Rassoulpour was sending fraudulent checks to the Funds, that money that was paid by the U.S. Government and owed to the Funds was misappropriated by Defendant Ali Rassoulpour.  By repeatedly sending those fraudulent checks through the United States mail interstate to the Funds' joint administrative office knowing the checks would not be honored by the bank, he directly participated in and conspired to commit mail fraud in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*.  By misappropriating the money owed to the Funds, he has deprived the Pension Fund of the money on which it depends to pay for the pension credits earned by RBNR Solutions' and Blens' employees, deprived the employees of their health care coverage, and deprived the employees of their Education Fund benefits.

200.    The Pension Fund, Health Fund and Education Fund, their participants and the employees of RBNR Solutions and Blens are the victims of Defendants' use of the United States mails and/or wires, as set forth above, in furtherance of their fraudulent scheme.  The Pension Fund, Health Fund and Education Fund staff have devoted significant time and resources over the years to dealing with RBNR Solutions' and Blens' persistent delinquencies and pattern of submitting fraudulent checks.  The

-74-

Funds' staff have had to repeatedly contact Defendant Ali Rassoulpour by phone, email and letter to try to obtain payment after receiving fraudulent checks. The Funds' staff has also spent considerable time tracking the payments owed by RBNR Solutions and Blens' because many of the checks that are received by the Funds are not honored by the bank. The Funds have also had to cancel health care coverage and deny education benefits as a result of the Defendants' fraudulent conduct and failure to pay contributions. The Funds have also had to engage the Funds' Legal Counsel on their behalf to demand payment after receiving fraudulent checks and oral representations that money would be forthcoming. The Pension Fund's other participants and other contributing employers are also harmed when persistent delinquencies impact the funding status of the Pension Fund on which they rely to provide benefits.

201. Defendant Robin Brevard, as the President and Owner of RBNR Solutions and Blens is the principal responsible for the acts of its agent Defendant Ali Rassoulpour and is vicariously liable to Plaintiffs for the harm caused to Plaintiffs as the result of the fraudulent and deceitful acts of Defendant Ali Rassoulpour.

202. The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, the Enterprise.

203. Each Defendant had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf. Each Defendant also attempted to benefit, and did benefit, from the activity of their employees and agents alleged herein, and thus were not passive victims of racketeering activity, but active perpetrators.

-75-

204.    Plaintiffs have been injured in its property as a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.  Plaintiffs'  damages include but are not limited to the legal fees and expenses incurred by the Pension Fund, Health Fund and Education Fund as a result of Defendants' wrongful actions.

205.    Plaintiffs have been damaged in an amount in excess of $25,000 as a result of Defendant Ali Rassoulpour's fraudulent and deceitful actions.  In addition, Plaintiffs' damages as a result of Defendant Ali Rassoulpour's fraudulent and deceitful acts are ongoing and will likely continue due to RBNR Solutions' and Blens' ongoing obligations under their Collective Bargaining Agreements to make monthly contribution payments to the Pension Fund, Health Fund, and Education Fund.

206.    Plaintiffs are entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys' fees, incurred by reason of Defendants' violations of 18 U.S.C. § 1962(c).

## THIRTEENTH CAUSE OF ACTION
### (Fraud by All Defendants)

207.    Plaintiffs incorporate and reallege herein each and every allegation of paragraphs 1 through 206 to the same effect as if restated here in full, and further alleges as follows.

208.    Defendants knowingly misrepresented, omitted, and/or concealed material facts from Plaintiffs in multiple circumstances, as alleged above.  Upon information and

belief, Defendant Ali Rassoulpour knowingly wrote out and sent checks to the Pension Fund, Health Fund and Education Fund that he knew were not going to be honored by the bank.

209.   Defendants made these misrepresentations and/or omissions while knowing that their misrepresentations and/or omissions were material and that the Funds would rely on these misrepresentations.

210.   Defendants made these misrepresentations and/or omissions with the intent of defrauding Plaintiffs, as alleged above.

211. These material misrepresentations and/or omissions were reasonably and justifiably relied upon by Plaintiffs.  Plaintiffs rely on self-reporting from participating employers and rely on employers to submit accurate contribution reports to the Funds detailing the hours worked by each employee over the course of the month.  Plaintiffs need these contribution reports and rely on their accuracy to properly provide credit to each employee for the hours they worked.  Plaintiffs do not have access to the information regarding how many hours were worked by each employee without receiving these contribution reports.  Plaintiffs further rely on employers submitting contribution payments, as detailed above and below.  Plaintiffs rely on the employer to submit the correct amount of contributions owed as reflected on the contribution reports.

212.   As a direct, proximate and foreseeable result of Defendants' fraud, Plaintiffs have been injured, including the suffering of significant pecuniary and other damages.

-77-

213.    Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts and, because of the reprehensible and outrageous nature of these acts,  Plaintiffs are entitled to, and should be awarded punitive damages from each Defendant.

## FOURTEENTH CAUSE OF ACTION
### (Permanent Injunction as to RBNR Solutions and Blens)

214.    Plaintiffs incorporate and reallege herein each and every allegation of paragraphs 1 through 213 to the same effect as if restated here in full, and further alleges as follows.

215.    As stated above, RBNR Solutions and Blens are bound to the terms of their Collective Bargaining Agreements which require monthly contribution reports and monthly contribution payments be sent to the Pension Fund, the Health Fund and the Education Fund.

216.    Defendants have failed to make timely contributions to the Funds for and on behalf of its employees and has failed to perform its obligations under the terms and conditions of the aforementioned Collective Bargaining Agreements and Trust Agreements of the Funds, and violated Section 515 of ERISA.

217.    Despite demands that Defendants perform their contractual obligations, Defendants have failed, neglected, omitted and refused to timely make those monthly contribution payments and submit the contribution reports.

218.    The Pension Fund depends on the monthly contributions to fund the pension credits earned by RBNR Solutions' and Blens' employees.  The Pension Fund's

Trustees are obligated, as part of their fiduciary duties, to give each RBNR Solutions and Blens employee pension credit for the time worked and/or paid to him by RBNR Solutions and Blens, notwithstanding whether the employer contributions are received by the Pension Fund.

219.    In addition, the Pension Fund is operating under a Funding Rehabilitation Plan as required by the Pension Protection Act of 2006.  The Pension Fund was certified as in the "red zone" for Plan Year 2019.  The Pension Fund relies on contributions coming in from participating employers like RBNR Solutions and Blens to fund the pensions earned by participants.   An employer's failure to submit its contributions also causes the Funds to lose the income that it could have earned by investing those contributions.  Combining the loss of investment income with the requirement to continue to pay benefits will eventually affect the ability of the Fund to pay future benefits, not just to RBNR Solutions' and Blens' employees, but to the employees of companies that have complied with their contractual obligations.  When employers are continuously delinquent it jeopardizes the actuarial soundness of the Fund and it could cause irreparable harm to the Pension Fund and its participants.

220.    The Health Fund relies on receiving the monthly contribution payments from RBNR Solutions and Blens so that it can provide health insurance coverage to the employees that are covered by the Collective Bargaining Agreements along with their spouses and dependents.  When RBNR Solutions and Blens fail to pay the monthly contribution payments, their employees and their employees' families lose eligibility for

health care coverage from the Health Fund.  The employees and their families expect to

have health care coverage and rely on that coverage, particularly in emergency

situations.  It is extremely disruptive when RBNR Solutions and Blens fail to pay the

monthly contributions and their employees' health care coverage lapses as a result.

The Health Fund has received repeated complaints from RBNR Solutions' and Blens'

employees who were unable to seek medical attention or pay for their prescription drugs

because coverage had lapsed due to RBNR Solutions and Blen's failure to pay

contributions.  One employee called the Health Fund office to complain they had to

reschedule a required surgery because of the lapse in coverage.  Defendants have

been warned on several occasions that their employees were complaining and could

not seek the medical attention they desperately needed as a direct result of Defendants'

actions.  Thereafter, Defendants have continued to refuse to submit contribution

payments or submitted fraudulent checks that were not honored by the bank.

221.    The Education Fund relies on receiving the monthly contribution payments

to fund the education and training opportunities provided by the Fund.  When the

monthly contributions are not received by the Education Fund, RBNR Solutions' and

Blens' employees are not eligible to take advantage of the education benefits they have

earned and that have been bargained for on their behalf.  Because of RBNR Solutions'

and Blens' contribution delinquencies, their employees' education benefits have been

suspended.  They are entitled to receive these benefits and should not suffer because

RBNR Solutions and Blens refuse to comply with their obligations to make the monthly

-80-

contribution payments.

222.    An employer's failure to submit its contributions also causes administrative

burden as the Funds' staff has to repeatedly contact delinquent employers to try to get

them to pay the contributions and submit contribution reports.

223.  ERISA Section 515 makes the contractual obligation to contribute to

multi-employer fringe benefits funds a requirement of Title I of ERISA.  ERISA Section

502(a)(3) authorizes the Court to enjoin any act or practice which violates any provision

of Title I of ERISA, including the obligation imposed by Section 515.

224.    As detailed above, Defendants have a history of failing to submit monthly

contribution reports and contribution payments on time.  Defendants have been

repeatedly warned that contributions must be received on time yet they show an

unwillingness to comply with their contractual and legal obligations.  Defendants' history

and pattern of behavior demonstrates that they will continue to violate the terms of their

Collective Bargaining Agreements without Court intervention.  Plaintiffs have no way to

compel Defendants to make timely payment and submit the required contribution

reports.  Plaintiffs have no adequate remedy at law and unless the Defendants are

mandatorily compelled to comply, the Plaintiffs will suffer irreparable harm.

225.    Absent a Court injunction, Defendants will continue to ignore their legal

responsibilities and the Funds will have no choice but to continue filing lawsuits, wasting

the Funds' and the Court's resources to try to compel Defendants' to pay the delinquent

contribution payments.  As detailed above, timely employer contributions are essential

-81-

to the survival of multiemployer benefit funds like the Plaintiffs.  The public interest is best served if the Defendants are enjoined from failing and/or refusing to make timely payment of monies owed to the Funds on behalf of all of RBNR Solutions' and Blens' employees.

226.    Plaintiffs request the Court permanently enjoin the Defendants and its agents, servants, and employees from failing and/or refusing to make timely payment of monies owed to the Pension Fund, Health Fund, and Education Fund on behalf of all of Defendants' employees for whom contributions are required under the Collective Bargaining Agreements.  Plaintiffs further request the Court permanently enjoin the Defendants and its agents, servants, and employees from failing and/or refusing to submit monthly contribution reports detailing the hours worked by its employees as required by the Collective Bargaining Agreements and the Funds' Agreement and Declaration of Trusts.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand that judgment be entered for each of them and against Defendants RBNR Solutions, LLP, Blens Solutions, LLC, RBNR Management Group, LLC, Robin Brevard, Ali Rassoulpour, and Nayereh Rassoulpour, jointly and severally, as follows:

1.    Judgment in favor of the LIUNA National (Industrial) Pension Fund for the following amounts:

Robert E. Coyle Federal Court House Buildings

-82-

(a)    August - September 2019 Delinquent Contributions: **$24,916.69**

(b)    October 2019 Estimated Delinquent Contributions: **$2,507.67**

(c)    Interest charges: **$225.01**

(d)    Additional interest representing the doubling of the accrued interest as mandated by ERISA Section 502(g)(2) (29 U.S.C. §1132(g)(2)), made applicable by ERISA Sections 4301(b), 515 (29 U.S.C. §§1451(b), 1145): **$225.01**

(e)    Check penalties: **$538.81**

Bakersfield Federal Court House Building

(f)    August - September 2019 Delinquent Contributions: **$906.44**

(g)    October 2019 Estimated Delinquent Contributions: **$476.78**

(h)    Interest Charges: **$41.86**

(i)    Additional Interest (in accordance with ERISA Section 502(g)(2)): **$41.86**

Tarrant County Court Building and Garage

(j)    August - September Delinquent Contributions: **$11,320.72**

(k)    October 2019 Estimated Delinquent Contributions: **$5,803.65**

(l)    Interest Charges: **$1,104.22**

(m)    Additional Interest (in accordance with ERISA Section 502(g)(2)): **$1,104.22**

(n)    Check penalties: **$1,325.66**

2.    Judgment in favor of the Laborers' National Health and Welfare Fund for the following amounts:

-83-

Robert E. Coyle Federal Court House Buildings

(a)     August - September 2019 Delinquent Contributions: **$22,496.71**

(b)     October 2019 Estimated Delinquent Contributions: **$11,474.07**

(c)     Interest charges: **$1,029.53**

(d)     Additional Interest (in accordance with ERISA Section 502(g)(2)): **$1,029.53**

(e)     Check penalties: **$1,000.00**

Bakersfield Federal Court House Building

(f)     August - September 2019 Delinquent Contributions: **$4,147.79**

(g)     October 2019 Estimated Delinquent Contributions: **$1,983.24**

(h)     Interest Charges: **$191.53**

(i)     Additional Interest (in accordance with ERISA Section 502(g)(2)): **$191.53**

Tarrant County Court Building and Garage

(j)     August - September Delinquent Contributions: **$22,761.03**

(k)     October 2019 Estimated Delinquent Contributions: **$11,668.61**

(l)     Interest Charges: **$2,236.72**

(m)     Additional Interest (in accordance with ERISA Section 502(g)(2)): **$2,236.72**

(n)     Check penalties: **$1,000.00**

3.     Judgment in favor of the Service Contract Education and Training Trust

Fund for the following amounts:

-84-

<u>Robert E. Coyle Federal Court House Buildings</u>

(a)    August - September 2019 Delinquent Contributions: **$571.71**

(b)    October 2019 Estimated Delinquent Contributions: **$279.88**

(c)    Interest charges: **$26.16**

(d)    Additional Interest (in accordance with ERISA Section 502(g)(2)): **$26.16**

(e)    Check penalties: **$69.08**

<u>Bakersfield Federal Court House Building</u>

(f)    August - September 2019 Delinquent Contributions: **$105.40**

(g)    October 2019 Estimated Delinquent Contributions: **$55.44**

(h)    Interest Charges: **$4.87**

(i)    Additional Interest (in accordance with ERISA Section 502(g)(2)): **$4.87**

<u>Tarrant County Court Building and Garage</u>

(i)    August - September 2019 Delinquent Contributions: **$797.24**

(j)    October 2019 Estimated Delinquent Contributions: **$408.71**

(k)    Interest Charges: **$79.58**

(l)    Additional Interest (in accordance with ERISA Section 502(g)(2)): **$79.58**

(m)    Check penalties: **$108.89**

4.    Judgment in favor of the LIUNA National (Industrial) Pension Fund,

Laborers' National Health and Welfare Fund, and the Service Contract

-85-

Education and Training Trust Fund for unpaid contributions and interest owed to the Fund that exceeds the estimated amounts listed above as shown on contribution reports;

5.      Judgment in favor of the LIUNA National (Industrial) Pension Fund, Laborers' National Health and Welfare Fund, and the Service Contract Education and Training Trust Fund for interest that accrues on the delinquent amount at the Funds' standard rate of 1.5% per month compounded until the date the delinquent amount is paid;

6.      Judgment in favor of the LIUNA National (Industrial) Pension Fund, Laborers' National Health and Welfare Fund, and the Service Contract Education and Training Trust Fund for any unpaid contributions due for the November 2019 work period until the date of Judgment;

7.      An Order compelling RBNR Solutions and Blens to submit to the Funds all past due monthly contribution reports;

8.      Judgment in favor of the LIUNA National (Industrial) Pension Fund, the Laborers' National Health and Welfare Fund and the Service Contract Education and Training Trust Fund for attorneys fees and costs, plus such additional attorneys fees and costs incurred by the Funds in relation to this action, in accordance with the mandate of ERISA Section 502(g)(2), 29 U.S.C. §1132(g)(2);

9.      Compensatory and punitive damages in excess of **$25,000** for harm

-86-

caused by Defendants' fraudulent conduct;

10.   A permanent injunction enjoining Defendants from failing, neglecting, and refusing to make its required contributions and submit contribution reports to the Funds as they fall due;

11.   That the Court retain jurisdiction of this case pending compliance with its Orders;

12.   Judgment in favor of the Laborers' National (Industrial) Pension Fund, Laborers' National Health and Welfare Fund, and the Service Contract Education and Training Trust Fund for post-judgment interest and the costs of this action;

13.   Such other and further relief as the Court deems just and proper.

Dated: December 19, 2019

Respectfully submitted,

/s/ James S. Ray
James S. Ray (DC Bar No. 265082)

/s/ Colleen Ray Corday
Colleen Ray Corday (DC Bar No. 1022853)

Law Offices of James S. Ray
108 North Alfred Street, 3rd Floor
Alexandria, Virginia 22314
Tel.: 703-836-8111
Fax: 703-836-1888
E-Mail: jrayraylaw@aol.com
        cray@rayraylaw.com

Counsel for Plaintiffs